Henry LAUMER, Appellant,

v.

UNITED STATES, Appellee.

No. 12246.

District of Columbia Court of Appeals.

Argued En Banc April 12, 1979.

Decided Dec. 5, 1979.

---

Carol G. Freeman, Glen Echo Heights, Md., appointed by the court, for appellant.

Andrea L. Harnett, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

---

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEKER, HARRIS, MACK, FERREN, Associate Judges, and YEAGLEY, Associate Judge, Retired.[*]

NEWMAN, Chief Judge:

On this appeal, we are asked to consider whether declarations against penal interest should be admissible in evidence as an exception to the hearsay rule in this jurisdiction. Concluding that they should, we remand for a new evidentiary hearing and for a ruling on whether the excluded statements meet the standards for admissibility that we adopt herein.[1] In Part I, we set forth the relevant evidence and trial proceedings. In Part II, we discuss the declaration against penal interest exception and adopt that exception as formulated in Fed. R.Evid. 804(b)(3) for this jurisdiction. We discuss the trial court's inquiry in ruling on the admissibility of such proffered declarations in Part III. Part IV contains our reasons for remanding appellant's case and ordering an evidentiary hearing.

**I**

At approximately 10 a. m. on June 18, 1975, Robert Mosimann, a self-employed plumber, was at the rear of a house at 1602 D Street, N.E., unloading tools from his truck. As he walked into the garage of the house with some tools, he saw a green Chrysler drive up behind his truck and park. A man got out of the car. When Mosimann came out of the garage, the man came in front of the truck and ordered him to move back into the garage. The man had what appeared to be the butt of a gun partially covered by his shirt.

Rather than obeying his assailant's order, Mosimann moved back towards his truck. When they were behind the truck, the man demanded Mosimann's wallet. Mosimann

---

* Judge Yeagley was an Associate Judge of the court at the time of the en banc argument. His status changed to Associate Judge, Retired, on April 20, 1979.

1. Appellant also contends that the trial court's ruling rejecting his proffer of statements against penal interest denied him due process under principles established in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Given our resolution of this matter on the law of evidence, we need not reach appellant's constitutional contention.

laid the wallet on the back of the truck. The man picked up the wallet, backed into his car and drove south on 16th Street. The wallet contained numerous items, including Exxon, American Oil, and Master Charge cards, Mosimann's driver's license and $2 in cash. Although the entire incident took only about five minutes, Mosimann managed to take note of the license number of the car, Maryland tag AXV 227. Mosimann immediately called the police. Upon their arrival, he described the robber in detail.

On July 24, 1975, about six weeks following the robbery, Detective William E. Patterson, Jr., showed Mosimann a group of photographs of men generally fitting the description of the robber. Mosimann picked appellant's picture from the photographic array. Thereafter, on September 4, 1975, Mosimann identified appellant in a lineup.

Trial was begun in May 1976, but on defense motion, a mistrial was declared when it appeared that further investigation of the case would be appropriate. Mosimann apparently had received his Exxon statement and found in it a slip indicating that his credit card, stolen during the robbery on June 18, had been used on July 11, some 23 days later, by Mr. James Hammond.

Subsequent investigation by the police revealed that the car for which the stolen credit card had been used had been rented to one Mary Kerry, who had lent the car to Donald Hales. Hales told the police that he had lent the car to James Hammond and that he believed that Hammond had used the credit card. Hales also told the police that he had found the stolen card in Hammond's car about four or five days before July 11. Both Hales and Hammond claimed that Hammond's car had been missing around the time the robbery took place.

Retrial began on February 28, 1977. The government's case consisted in large part of Mosimann's testimony of the robbery on June 18. He also testified that he had identified appellant in the photographic array and the lineup.

In his defense, appellant took the stand and denied that he had robbed Mr. Mosimann or that he had ever carried a handgun in the District of Columbia, although he admitted that he might have passed the house at 1602 D Street, N.E. on the morning of the robbery. Appellant further testified that at the time of the robbery he was at 1001 F Street, N.E., the house of a former co-worker and that he had been driving a maroon Oldsmobile.[2]

Webb Johnson testified in appellant's defense that he had seen appellant at about 9:00 a. m. on the morning of June 18, 1975, in front of 1602 D Street, N.E., when appellant drove up behind his car in a red Oldsmobile Cutlass.

The final witness on behalf of the defense was Detective Patterson, who was permitted to testify that the car driven by the robber, bearing Maryland tags AXV 227, was registered to Bernice Hammond and that one of the credit cards taken from Mosimann by the robber had been used after the robbery. The defense proffered further testimony by Detective Patterson to show that James Hammond, the husband of Bernice Hammond, had been in possession of at least one of the stolen credit cards on July 11, 1975, a few weeks after the robbery, and possibly on the very night of the robbery, but this testimony was excluded by the court as constituting inadmissible hearsay.[3]

2. Appellant was arrested on the night of the robbery for unauthorized use of a maroon Oldsmobile.

3. At the outset of trial, defense counsel explained to the trial court that a mistrial had been declared during the first trial in May of 1976. Defense counsel proposed to call Hales and Hammond as witnesses to establish whether they had used the stolen credit cards. Counsel argued that in determining whether appel-

lant had committed the robbery, the jury should be able to consider the coincidence that the stolen credit card had been used shortly after the robbery by the husband of the owner of the getaway car. The trial court ruled such evidence relevant and appointed counsel to consult with both Hales and Hammond concerning their testimony.

After consulting with appointed counsel, both Hales and Hammond declined to testify, asserting their privilege against self-incrimina-

Testifying without the jury present, Detective Patterson related statements made to him by Hales and Hammond during the course of his investigation. Patterson testified that Hales had told him that a woman had rented a car for him which he and Hammond used on July 11, 1975; that Hammond had given him [Hales] the credit card to use in buying gas for the rental car that night; and that Hammond had been with him when they bought the gas. Hammond had also told the detective that on the day of the robbery, he had come to court with Hales and when he had come out of court he had found his car missing. Hammond claimed to have made a police report about the missing car. Hammond also told the officer that he had found the car late that night and had discovered the stolen credit cards on the seat. Hales was with him at the time. Hammond told Detective Patterson that he thought the cards belonged to Hales, and he had given them to Hales, but did admit that he had used them twice. Finally, both Hales and Hammond told the detective that they did not know appellant. It was the foregoing testimony of Detective Patterson which appellant unsuccessfully sought to have admitted under the declaration against penal interest exception to the hearsay rule.

## II

■ Hearsay evidence, the in-court testimony of an out-of-court statement offered to prove the truth of the matter asserted, is generally not admissible at trial. McCormick, Law of Evidence § 246, at 584 (2d ed. 1972); 5 Wigmore, Evidence § 1361, at 2–3 (3d ed. 1940). The rule of evidence which renders hearsay inadmissible

is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury. [*Chambers v. Mississippi*, 410 U.S. 284, 298, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973) citing *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).]

However, there exist a number of exceptions to the hearsay rule that provide for the admission of statements because they exhibit certain indicia of reliability that overcome or outweigh the normal risks associated with the inherent dangers of hearsay statements.[4] Thus where statements display "a circumstantial probability of trustworthiness," 5 Wigmore, *supra* §§ 1420–22, they are generally admissible. *See, e. g., Nicholson v. United States*, D.C. App., 368 A.2d 561 (1977) (holding spontaneous utterance admissible).

The declaration against penal interest traditionally was not included among the exceptions to the hearsay rule.[5] *See* McCormick, *supra* § 278, at 673; 5 Wigmore, *supra* § 1476, at 283. Indeed, for a number of years, the majority of American courts totally rejected statements against the declarant's penal interest while admitting declarations against pecuniary and proprietary interest. *See* McCormick, *supra*

tion. During a voir dire held outside the presence of the jury, Hales refused to answer questions of whether he would deny he had been with Hammond that day, and whether he would deny that he was with Hammond on July 11, 1975. Hammond, during voir dire, admitted that he was related to Bernice Hammond, but declined to answer when questioned whether during the summer of 1975 his wife had owned a car bearing Maryland tags AXV 227, and whether during that time he had been in possession of a credit card owned by Robert Mosimann.

4. *See generally McCormick, supra* § 245, at 584–85.

5. Under the general declaration against interest exception, two prerequisites must be satisfied: the declarant must state facts against his pecuniary or proprietary interest, and second, the declarant must be unavailable at the time of trial. *See generally* Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule*, 58 Harv.L.Rev. 1 (1944).

§§ 277–78, at 671–73; 5 Wigmore, *supra* § 1476, at 283–88. Most commentators have concluded that the distinction drawn between declarations against pecuniary and proprietary interest and those against penal interest is an historical accident. This distinction was first made by the House of Lords in the *Sussex Peerage Case*, 8 Eng. Rep. 1034 (H. L. 1844). Both Wigmore and McCormick state that the House of Lords ignored prior English precedent which held that declarations against penal interest were admissible as an exception to the hearsay rule. *See McCormick, supra* § 278, at 673; 5 Wigmore, *supra* § 1476, at 283.

Despite the fact that there was little support for the view that declarations against penal interest were less reliable than declarations against pecuniary or proprietary interest, the federal courts and the majority of state courts in this country adopted the rule of the *Sussex Peerage Case. See, e. g., Donnelly v. United States*, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913). *See generally* Note, *Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule*, 56 B.U.L.Rev. 148, 148–49 & n. 4 (1976).

The primary rationale for the rule of evidence totally rejecting the declaration against penal interest exception states that to admit such statements would encourage criminal defendants to introduce perjured testimony. As the court stated in *Brennan v. State*, 151 Md. 265, 271, 134 A. 148, 150 (1926):

> Every one accused of crime would be tempted to introduce perjured testimony concerning statements of some third person, then beyond the jurisdiction of the court, admitting that such third person and not the defendant, had committed the crime in question, and the experience

of courts render it certain that many would yield to such a temptation.

*See also Thompson v. State*, 309 So.2d 533 (Miss.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 250 (1975); *Pitts v. State*, 307 So.2d 473 (Fla.Dist.Ct.App.), *cert. dismissed*, 423 U.S. 918, 96 S.Ct. 302, 46 L.Ed.2d 273 (1975).

▆ The rule of the *Sussex Peerage Case* has been the law of this jurisdiction since the decision of the Supreme Court in *Donnelly v. United States, supra*. Since then, federal courts in the District of Columbia have adhered to the rule of evidence which bars declarations against penal interest from evidence without reexamining the reasoning behind the rejection of this exception to the hearsay rule. *See United States v. Alexander*, 139 U.S.App.D.C. 163, 430 F.2d 904 (1970).[6] This court, like the federal courts, has followed the traditional rule. *See Henson v. United States*, D.C.App., 399 A.2d 16 (1979); *Steadman v. United States*, D.C.App., 358 A.2d 329 (1976).[7] In fact, we have had no occasion to adopt the penal interest exception. In *Steadman, supra*, the defendants proffered the testimony of three witnesses who had heard unknown persons make statements after a shooting to the effect that they had heard a declarant unknown to them state that he had shot someone. Noting that the proffered declaration was untrustworthy, we stated that such testimony would not be admissible even under the liberal standards of the Federal Rules of Evidence. *Id.* at 332. Similarly, in *Henson, supra*, we held that the declarant, who had been arrested along with the defendant and charged with the same offenses as the defendant, did not possess a sufficient penal interest such that the declaration could overcome clear suggestions of fabrication. Again, we noted that the prof-

---

6. *But see* note 12, *infra*, and accompanying text.

7. While the decisional law of the federal courts interpreting various rules of evidence often provide guidance, this court is the final authority for establishing the evidentiary rules for the Superior Court of the District of Columbia. As the Supreme Court stated:

[I]t has become settled practice for this Court to recognize that the formulation of rules of evidence for the District of Columbia is a matter purely of local law to be determined— in the absence of specific Congressional legislation—by the highest appellate court for the District. [*Griffin v. United States*, 336 U.S. 704, 717, 69 S.Ct. 814, 820, 93 L.Ed. 993 (1948).]

fered declaration would not be admissible under the Federal Rules of Evidence. *Id.* Thus, concerned with the ease with which criminal defendants could easily procure fabricated testimony, we declined to abandon the traditional rule which bars declarations against penal interest. However, we are now convinced that the basis for the rejection of the penal interest exception—that *all* such declarations are inherently untrustworthy—requires reexamination.

The primary flaw in this proposition is that it ignores the very principle upon which the general declaration against interest exception is based. That principle, which states that an average person will not acknowledge the existence of a fact that is counter to his interest unless he knows it to be true, requires as a matter of logic, that declarations against penal interest be admissible as well as those statements against pecuniary or proprietary interest. Moreover, by placing the possible loss of a person's property interest above the possible loss of one's liberty, the traditional limitation on declaration against penal interest runs counter to human experience. As the New York Court of Appeals noted:

> [T]he distinction which would authorize a court to receive proof that a man admitted he never had title to an Elgin watch, but not to receive proof that he had admitted striking Jones over the head with a club, assuming equal relevancy of both statements, does not readily withstand analysis. [*People v. Brown*, 26 N.Y.2d 88, 91, 308 N.Y.S.2d 825, 827, 257 N.E.2d 16, 17 (1970).]

The fear that criminal defendants will procure fabricated testimony is no doubt a legitimate concern, and courts must be forever mindful of their duty to maintain the integrity of the truth-finding function of the trier-of-fact. *See, e. g., State v. Larsen*, 91 Idaho 42, 49, 415 P.2d 685, 692 (1966); *People v. Lettrich*, 413 Ill. 172, 178, 108 N.E.2d 488, 491–92 (1952). However, the possibility of perjury and fabrication is present in all cases, and the proposition that criminal defendants will be encouraged to seek false testimony is "a good argument against admitting any witnesses at all." 5 Wigmore, *supra* § 1477, at 289; *see also People v. Edwards*, 396 Mich. 551, 242 N.W.2d 739, 744 (1976); *Hines v. Commonwealth*, 136 Va. 728, 745, 117 S.E. 843, 845 (1923). More importantly, the concern that the acceptance of declarations against penal interest will induce an accused to seek false testimony is not an argument in support of the total rejection of the exception. It is rather an argument in favor of requiring that the statements of the declarant display the threshold requirements of trustworthiness and the unavailability of the declarant. Excluding certain declarations against penal interest on the ground that they do not contain sufficient indicia of reliability or because they were not made under circumstances that would indicate their trustworthiness is consistent with the broad purpose of the hearsay rule. Once it has been determined that a statement offered under the declaration against penal interest exception is trustworthy, the truth of the statement as well as the credibility of the witness who repeats the statement must be weighed by the trier-of-fact.

We think the better approach is to ask whether the policy behind other hearsay exceptions applies to declarations against penal interest. *See* Note, *Declarations Against Penal Interest: What Must be Corroborated Under the Newly Enacted Federal Rule of Evidence, Rule 804(b)(3),* 9 Val.U. L.Rev. 421, 426 (1975). The trustworthiness of declarations against penal interest arises from common experience and our intuitive notions that "a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examination are wanting." 5 Wigmore, *supra* § 1457, at 262, 263. *See also People v. Spriggs*, 60 Cal.2d 868, 874, 36 Cal.Rptr. 841, 845, 389 P.2d 377, 381 (1964). Moreover, the necessity for such evidence stems from one of the traditional requisites of the general declaration against interest exception: that the declarant be unavailable. *See* 5 Wigmore, *supra* § 1456, at 260.

■ There is another perspective that casts further doubt on the validity of a strict adherence to the orthodox limitation of the *Sussex Peerage* case. It is a fundamental doctrine of substantive criminal law that the confessions and the admissions of a criminal defendant, assuming that they are voluntary, are admissible in evidence. *See Wong Sun v. United States*, 371 U.S. 471, 488–89, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *Opper v. United States*, 348 U.S. 84, 88–90, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The reason for their admissibility is obvious: such statements are highly probative of a defendant's guilt since we believe that it is unlikely that a rational person would admit to a crime if it were not true. However, not all confessions are admissible, and we exclude those confessions that are inherently untrustworthy. The rationale for rejecting some confessions was explained by the Supreme Court in *Wong Sun*:

> In our country the doubt persists·that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an enemy or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession. [*Wong Sun v. United States, supra*, 371 U.S. at 489, 83 S.Ct. at 418, quoting *Opper v. United States, supra*, 348 U.S. at 89–90, 75 S.Ct. 158.]

Thus to assure that confessions were made under circumstances guaranteeing their trustworthiness, the government is required to introduce "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper v. United States, supra*, 348 U.S. at 93, 75

S.Ct. at 164. *See also Harrison v. United States*, D.C.App., 281 A.2d 222 (1971). We therefore strike a balance between the need for such highly probative evidence as a confession or admission and the concern that such confessions may have been procured under circumstances that render them untrustworthy by imposing a corroboration requirement. Yet the traditional rule totally barring declarations against penal interest, which is in essence a third-party confession, rejects all proffered declarations against penal interest, no matter how probative and trustworthy.

We can discern no logical basis for the continued total rejection of declarations against penal interest.· In effect, the rule which renders such statements inadmissible keeps reliable and probative evidence from the trier of fact, *solely on the basis of the law of evidence.* The law of evidence should not permit such a harsh result. As Mr. Justice Holmes stated in his dissent in *Donnelly v. United States*:

> The rules of evidence in the main are based on experience, logic, and common sense, less hampered by history than some parts of substantive law. . . . [T]he English cases since the separation of the two countries do not bind us; the exception to the hearsay rule in the case of declarations against interest is well known; no other statement is so much against interest as a confession of murder; it is far more calculated to convince than dying declarations. . . . [*Donnelly v. United States, supra*, 228 U.S. at 277–78, 33 S.Ct. at 461.]

The exclusion of declarations against penal interest has been subjected to considerable criticism by a number of jurists[8] and legal scholars.[9] Moreover, under both the

---

8. *See, e. g., United States v. Annunziato*, 293 F.2d 373, 378 (2d Cir. 1961) (Friendly, J.); *People v. Spriggs, supra* (Traynor, J.); *People v. Brown, supra* (Bergan, J.). See also the comment of Chief Justice Burger in *United States v. Harris*, 403 U.S. 573, 584, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

9. Dean Wigmore states:
   > The only practical consequences of this unreasoning limitation are shocking to the sense of justice; for in its commonest application it requires, in a criminal trial, the rejection of a confession, however well authenticated, of a person deceased or insane or fled from the jurisdiction (and therefore quite unavailable) who has avowed himself to be the true culprit. The absurdity and wrong of rejecting indiscriminately all such evidence is patent. . . . [5 Wigmore, *supra* § 1477, at 289.]

American Law Institute Model Code of Evidence, Rule 509 (1942), and the Uniform Rules of Evidence, Rule 63(10) (1953 ed.), declarations against interest whether pecuniary, proprietary, or penal are admissible. In addition, North Carolina, Massachusetts, Michigan, Pennsylvania, and New York have recently adopted the penal interest exception. *See State v. Haywood,* 295 N.C. 709, 249 S.E.2d 429 (N.C.1978); *Commonwealth v. Carr,* 373 Mass. 617, 369 N.E.2d 970 (1977); *People v. Edwards, supra; Commonwealth v. Nash,* 457 Pa. 296, 324 A.2d 344 (1974); *People v. Brown, supra.* Other states have adopted a similar view either by judicial decision,[10] court rule,[11] or by statute.[12]

The Supreme Court has abandoned the decision in *Donnelly v. United States, supra,* and declarations against penal interest have been admissible in federal courts since the promulgation of the Federal Rules of Evidence which became effective in 1975 after thirteen years of lengthy study and debate. 28 U.S.C. App. at 539–1103 (1976).[13] The legislative history of Rule 804(b)(3) reveals that the Rule, as originally authored by the Rules of Evidence Advisory Committee of the Judicial Conference of the United States and approved by the Supreme Court, abolished the strict proscription against the admissibility of declarations against penal interest. Concerned that some statements,

although falling within the definition of declaration against penal interest, lack sufficient indicia of reliability as to render them trustworthy, the Committee imposed a corroboration requirement. Thus, the draft of Rule 804(b)(3) that was approved by the Supreme Court provided that declarations against penal interest "[are] not admissible unless corroborated." *See* 56 F.R.D. 183, 321. The House Judiciary Committee, observing that declarations against penal interest were more "suspect" than declarations offered for other purposes and fearing that the Rule as originally drafted would not go far enough in preventing fabrication, strengthened the corroboration requirement by providing that declarations against penal interest are not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." *See* H.R.Rep.No.650, 93d Cong., 1st Sess. 16 (1974), U.S.Code Cong. & Admin. News 1974, pp. 7051, 7089. It was this version of the Rule that was finally approved by both houses of the Congress and signed by the President in 1975. Rule 804(b)(3) currently provides that if the declarant is unavailable as a witness, the hearsay rule does not exclude

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest . .

*See also* Morgan, *Declarations Against Interest,* 5 Vand.L.Rev. 451, 463 (1952); McCormick, *supra* § 278.

**10.** *See Deike v. Great Atlantic & Pacific Tea Co.,* 3 Ariz.App. 430, 415 P.2d 145 (1966) (intermediate court); *State v. Leong,* 51 Haw. 581, 587–88, 465 P.2d 560 (1970); *State v. Larsen, supra* (Idaho); *People v. Lettrich, supra* (Illinois); *Thomas v. State,* 186 Md. 446, 47 A.2d 43 (1946); *State v. Higginbotham,* 298 Minn. 1, 212 N.W.2d 881 (1973); *Sutter v. Easterly,* 354 Mo. 282, 189 S.W.2d 284 (1945); *Band's Refuse Removal, Inc. v. Borough of Fair Lawn,* 62 N.J.Super. 522, 163 A.2d 465 (1960); *Howard v. Jessup,* 519 P.2d 913 (Okl.1973); *Newberry v. Commonwealth,* 191 Va. 445, 61 S.E.2d 318 (1950).

The states that have abandoned the traditional rule have taken different approaches in overruling their prior cases and have often adopted different standards governing the admissibility of declarations against penal interest. *Compare People v. Edwards, supra,* with *Commonwealth v. Carr, supra. See generally* Note, *Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule, supra.*

**11.** *See, e. g.,* Me.R.Evid. 804(b)(3).

**12.** *See* Kan.Stat.Ann. § 60–460 (1976); Wis. Stat.Ann. § 908.045(4) (1975).

**13.** The Supreme Court approved a draft of the Federal Rules of Evidence in November 1972. *See* 56 F.R.D. 183 (1972). Thereafter, the rules went through a "House draft," *see* H.R.Rep.No. 650, 93d Cong., 1st Sess. (1974), a "Senate draft," *see* H.R.Rep.No.5463, 93d Cong., 2d Sess. (1974), and a final compromise conference draft before being passed by both Houses. The final draft was signed by the President on February 2, 1975. For a history of the thirteen-year development of the Federal Rules, *see* 1 J. Weinstein & M. Berger, Weinstein's Evidence at vii-xi (1975).

that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

■ We think that the approach of the federal rule admitting declarations against penal interest is the preferred one for it not only abolishes the doctrine that totally bars declarations against penal interest from evidence, but also assures that proffered declarations against penal interest contain those indicia of reliability that are consistent with the rationale behind other hearsay exceptions. We therefore hold that a statement tending to expose the declarant to criminal liability and offered as tending to exculpate the accused is admissible when the declarant is unavailable *and* corroborating circumstances clearly indicate the trustworthiness of the statement. In other words, we adopt the test contained in Fed. R.Evid. 804(b)(3).

### III

■ Since the decision as to the admissibility of a proffered declaration against penal interest rests with the trial court, the trial judge bears a significant responsibility under the rule we adopt today. The rule as set forth requires that the trial judge undertake a three-step inquiry to ascertain (1) whether the declarant, in fact, made a statement; (2) whether the declarant is unavailable; and (3) whether corroborating circumstances clearly indicate the trustworthiness of the statement. In order to give maximum guidance to the trial court, we turn now to a discussion of those three considerations.

#### A. *Whether the Declarant In Fact Made a Statement*

■ In determining whether the declarant in fact made the proffered statement, the trial court's focus is not on the truth of the declaration, but on the veracity of the witness who repeats the declaration. Since the testimony of the witness may often be the only evidence that the statement was made, the trial court must necessarily determine that the witness was in a position to hear the statement. Where appropriate, the trial court must also assess the general credibility of the witness and probe for interest, bias, and the possible motive for fabrication. Some witnesses will no doubt display a high degree of credibility, leaving little doubt that the declaration was in fact made. *See, e. g., Debinder v. United States*, 112 U.S.App.D.C. 343, 344, 303 F.2d 203, 204 (1962) (mother repeated confession made by son); *Thomas v. State*, 186 Md. 446, 447–48, 47 A.2d 43, 46 (1946) (police officer would be allowed to testify as to the inculpatory statement made by the declarant during the course of police investigation). Because the potential for fabrication is considerably strong, courts may require a more persuasive showing that the statement was in fact made. *See, e. g., United States v. Alexander*, 139 U.S.App.D.C. 163, 165, 430 F.2d 904, 906 (1967) (several inmates would not be allowed to testify that the declarant confessed to the crime while in prison).

If the trial judge concludes that no statement was made, then no basis exists for any further inquiry, and the proffered testimony should be excluded. However, once it is determined that a statement was in fact made, the trial court must proceed to determine if the unavailability and corroboration requirements are satisfied.

#### B. *Whether the Declarant is Unavailable*

■ It is well established in this jurisdiction that one of the fundamental predicates to the admissibility of declarations against interest is that the declarant be unavailable as a witness. *See Alston v. United States*, D.C.App., 383 A.2d 307 (1978); *Gichner v. Antonio Troiano Tile & Marble Co.*, 133 U.S.App.D.C. 250, 410 F.2d 238 (1969). Moreover, "[t]he proponent of such evidence has the burden of establishing that the witness is unavailable." *Coppedge v. United States*, 114 U.S.App.D.C. 79, 83, 311 F.2d

128, 132 (1962); *United States v. Lynch,* 163 U.S.App.D.C. 6, 17–18, 499 F.2d 1011, 1022–23 (1974). Under the Federal Rules of Evidence, one who offers a statement against penal interest can meet this burden by establishing, *inter alia,* that the declarant "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement." Fed.R.Evid. 804(a)(1). *See also Alston v. United States, supra; United States v. Elmore,* 423 F.2d 775, 778 (4th Cir.), *cert. denied,* 400 U.S. 825, 91 S.Ct. 49, 27 L.Ed.2d 54 (1970). If an accused establishes that the declarant erroneously persists in refusing to testify, he also meets the unavailability requirement. Fed.R.Evid. 804(a)(2). *See also Mason v. United States,* 408 F.2d 903 (10th Cir. 1969), *cert. denied,* 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441 (1971); *United States v. Fiore,* 443 F.2d 112, 115 & n. 3 (2d Cir. 1971), *cert. denied,* 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973); McCormick, *supra* § 253, at 612.

### C. Whether Corroborating Circumstances Clearly Indicate the Trustworthiness of the Statement

■ Having established that the declarant is unavailable, a defendant who seeks the admission of a declaration against penal interest must also demonstrate that there exist corroborating circumstances that clearly indicate the trustworthiness of the statement. The Notes of the Advisory Committee on Proposed Rules do not set forth with particularity what circumstances might satisfy the corroboration requirement, but it states that the corroboration requirement must "be construed in such a manner as to effectuate its purpose of circumventing fabrication." Fed.R.Evid. Advisory Committee's Note to Rule 804, Subdiv. (b), Exception (3). *See generally* S. Saltzburg and K. Redden, Federal Rules of Evidence Manual 602–03 (2d ed. 1977). Accordingly, the proponent of a proffered declaration against penal interest must overcome a significant burden under the rule we adopt today. He must demonstrate that the statement was made under circumstances clearly indicating its trustworthiness. While this corroboration requirement does

not require an absolute guarantee of the accuracy of the proffered statement, *see United States v. Barrett,* 539 F.2d 244, 253 (1st Cir.1976), statements which are inherently untrustworthy or statements which were made under circumstances such that a reasonable person would doubt their veracity should be excluded. *See United States v. Guillette,* 547 F.2d 743 (2d Cir.1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977); *United States v. Bagley,* 537 F.2d 162 (5th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977).

The Supreme Court in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), referred to a number of general considerations that are relevant to an inquiry as to the trustworthiness of declarations against penal interest:

(1) the time of the declaration and the party to whom the declaration was made;

(2) the existence of corroborating evidence in the case; [and]

(3) the extent to which the declaration is really against the declarant's penal interest. . . . [*United States v. Guillette, supra* at 754, citing *Chambers v. Mississippi, supra,* 410 U.S. at 300–01, 93 S.Ct. 1038.]

We now discuss each of those considerations in turn.

### 1. The Time of the Declaration and the Party to Whom it Was Made

■ A number of courts have focused on the time of the declaration in determining whether the statement is trustworthy. This focus on time is based on the notion that declarations made shortly after the crime for which an accused is charged are often more reliable than those made after a lapse of time. Courts therefore have been more solicitous of those declarations because the absence of reflection under some circumstances may lessen the opportunity for fabrication. For example, in *Chambers v. Mississippi, supra,* the Court observed that the fact that the declaration was made shortly after the crime was a strong indication of reliability. *Id.* at 300, 93 S.Ct. 1038. In contrast, the court in *United States v.*

*Guillette, supra,* found that the declarant's inculpatory statement which was made some four months after the crime was too attenuated and remote to provide assurance of reliability. *Id.* at 759. *See United States v. Satterfield,* 572 F.2d 687, 690 (9th Cir.1978) (two year lapse between crime and declaration casts doubt on reliability of statement).[14] Of course the mere fact that the declaration was made after a lapse of time does not *in and of itself* render the statement unreliable. Reflection *may* also generate a trustworthy statement.

The existence of a close relationship between the declarant and the witness also may provide indications of trustworthiness. When the declarant reveals the inculpatory statement to close friends and relatives, some courts have found this to be a sufficient indication of reliability, *see, e. g., Chambers v. Mississippi, supra,* 410 U.S. at 300, 93 S.Ct. 1038; *Debinder v. United States, supra,* 112 U.S.App.D.C. at 344, 303 F.2d at 204, because it indicates that the declarant was aware of his potential criminal liability and therefore revealed the statement only to those persons whom he thought he could trust. The guarantee of trustworthiness stems from the existence of no motive on the part of the declarant to falsify.[15]

However, the declarant may make an inculpatory statement to an individual or public official with whom he has no close relation, yet the statement may display strong indications of reliability. *See, e. g., United States v. Thomas,* 571 F.2d 285, 290 (5th Cir.1978) (fact that inculpatory declaration was made to the United States Magistrate presents strong assurance of reliability); *Thomas v. State, supra,* 186 Md. at 447–48, 47 A.2d at 44 (the declarant confessed to police officers during the course of their investigation of the crime for which the accused was later charged). An inculpatory statement made to a police officer may be distinctly trustworthy because the declarant may be assumed to have been immediately aware of the consequences of such a statement. At the same time, a motive to falsify and exculpate oneself may be present in communicating with the police, and a trial judge will take this possibility into consideration when initially determining the inculpatory nature of the proffered statement.

### 2. The Existence of Corroborating Evidence in the Case

Where the evidence in the case suggests that the declarant and not the accused may

---

**14.** Where the declarant has made an incriminating statement of future intent to commit the crime for which an accused is charged, such statements may fall within the state of mind exception to the hearsay rule. *See United States v. Annunziato,* 293 F.2d 373 (2d Cir.), *cert. denied,* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961); *State v. Sejuelas,* 94 N.J. Super. 576, 582–83, 229 A.2d 659, 662–63 (App. Div.1967).

**15.** It should be noted that the focus on the party to whom the statement was made is consistent with the requirement that the declarant be aware of the disserving quality of the statement. The legislative history of the rule reveals that Congress recognized the difficulty of ascertaining the declarant's actual subjective state of mind for purposes of determining whether the declarant was aware of possible criminal liability, and rejected a requirement that the trial court inquire into the declarant's actual state of mind. *See Hearings on Proposed Rules of Evidence Before the Special Subcomm. on Reform of Federal Criminal Laws of the House Comm. on Judiciary,* 93d Cong., 1st Sess., sec. 2, at 59 (1973). Congress there-

fore established an objective test to resolve the state of mind issue. That test provides that statements are admissible if a reasonable person in the declarant's shoes would not have made the statement without believing it to be true. *See* Fed.R.Evid. 804(b)(3). Although the penal interest exception does not specifically incorporate the requirement that the declarant be aware of the disserving quality of his statement, such a requirement is basic to the general declaration against interest exception.

Accordingly, when viewing a proffered declaration against penal interest, it is appropriate for the trial court to consider objective factors bearing on the declarant's state of mind. Unless evidence exists to the contrary, most of the factors relevant to a consideration of whether corroborating circumstances indicate the trustworthiness of the statement will be relevant to a resolution of the state of mind issue, *i. e.,* the time of the declaration, the party to whom the declaration was made, and the extent to which the declaration is really against the declarant's penal interest.

have committed the crime, a number of courts have found that the statement should be admitted. *See People v. Lettrich, supra,* 413 Ill. at 178–79, 108 N.E.2d at 491–492; *Hines v. Commonwealth, supra,* 136 Va. at 750, 117 S.E. at 844. In *Hines* the third party declarant who had admitted committing the crime for which the defendant was charged appeared to be as closely linked to the crime as the defendant. He had a weapon that was of the same caliber as the murder weapon; he was the same size as the man seen running from the scene of the crime; and prior to the crime he had threatened to kill a police officer. The court found that this other evidence tended to corroborate the statement of the declarant. *Id.*

■ Not every case in which an accused proffers a declaration against penal interest will present such strong evidence linking the declarant to the crime.[16] Nor should such strong evidence be required; the trial court should not place the accused in the role of a prosecutor, having to prove the declarant's guilt beyond a reasonable doubt. Where such evidence does exist, it should be viewed as strong corroborating circumstances tending to indicate the trustworthiness of the statement.[17]

### 3. The Extent to Which the Declaration is Really Against the Declarant's Penal Interest

■ In determining whether a declaration against penal interest is trustworthy, the trial court must ascertain the extent to which the statement is against the declarant's penal interest. *See Henson v. United States, supra.* Some proffered declarations will no doubt be excluded because the statement, although facially against the declarant's penal interest, could not subject the declarant to criminal liability. Under these circumstances, the non-existence of potential criminal liability poses no deterrent to falsification. Where the declarant has already been convicted of a crime before making the declaration and only the possibility of a longer period of incarceration exists as a deterrent to fabrication, some courts have deemed the extent of the penal interest insufficient to guarantee the accuracy and trustworthiness of the statement. *See Henson v. United States, supra; United States v. Dovico,* 380 F.2d 325 (2d Cir.), *cert. denied,* 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 302 (1967). Similarly, where the declarant makes a statement after acquittal and double jeopardy is a bar to further prosecution, penal liability may not be sufficiently implicated to be admissible. Moreover, a statement rendered under a grant of immunity presents similar weaknesses. *See United States v. Gonzalez,* 559 F.2d 1271, 1273 (5th Cir.1977) (statement made under offer of immunity lessens reliability). *See* Note, *Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule, supra* at 157–58.

■ Undoubtedly there will be proffered declarations in which portions are inculpatory, other portions are neutral or collateral as to the declarant's penal interest, and still other portions are self-serving or exculpatory. As a preliminary matter, the trial judge must determine that the statement is not so colored by the exculpatory portions as to render the statement as a

---

16. In some cases the declarant may inculpate himself in a crime, such as illegal possession, which is not necessarily inconsistent with the guilt of the accused, yet the declarant's statement may be highly relevant to some facet of the prosecution's case against the defendant, such as knowledge of possession of concealed contraband. *See United States v. Bagley,* 537 F.2d 162 (5th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977) (held admissible a statement that declarant mistakenly gave defendant a bag of heroin instead of a bag of Valium); *People v. Sullivan,* 43 A.D.2d 55, 349 N.Y.S.2d 702 (1973) (held admissible a statement that declarant inadvertently left a concealed gun in defendant's car). Corroborating evidence in such cases should bear on the truth of declarant's statement and need not tend independently to exculpate the accused.

17. Indeed, due process considerations may require that such statements be admitted. *See Chambers v. Mississippi, supra; State v. Gardner,* 13 Wash.App. 194, 534 P.2d 140 (1975) (declarations "inherently inconsistent" with guilt of accused are admissible on due process grounds).

whole exculpatory, *i. e.*, not "so far tended to subject him to . . . criminal liability," Fed.R.Evid. 804(b)(3). After this initial inquiry, the extent to which the relevant portions of the statement are against the declarant's penal interest must be determined. While we are not called upon here to decide whether all of a statement containing a declaration against penal interest is admissible, *compare* 5 Wigmore, *supra* § 1465, at 271 (would allow in full statement) *with* McCormick, *supra* § 279, at 675–77 (would allow in only disserving and collateral portions), at a minimum the disserving portions are admissible. *United States v. Barrett*, 539 F.2d 244, 252 (1st Cir.1976) (admitting collateral portion along with inculpatory portion); *People v. Leach*, 15 Cal.3d 419, 441, 124 Cal.Rptr. 752, 767, 541 P.2d 296, 311 (1975) (excluding any portion of a statement against penal interest "not itself specifically disserving to the interests of the declarant"); *State v. Abrams*, 140 N.J.Super. 232, 356 A.2d 26 (App.Div.1976), *aff'd* 72 N.J. 342, 370 A.2d 852 (1977) (whole statement admissible). Factors to be considered include the extent to which collateral portions are tied up with or implied by the inculpatory portions. *See* Note, *Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule, supra* at 165–68.

■ Examination of the above considerations reveals that the corroboration requirement of the rule we announce today involves no fixed criteria. The three factors discussed above are not exhaustive and no one factor will be dispositive. Often the presence of one factor will be instructive as to whether there exists a sufficient guarantee of trustworthiness. In other cases a more complete inquiry will be required. Beyond the preceding discussion, we find it unnecessary to set forth the myriad of factual alternatives which may satisfy the corroboration requirement of declarations against penal interest. Such judgments are better left to the determination of the trial court. The circuits have expressed conflicting views as to the proper scope of appellate review of trial court rulings on the admissibility of declarations against penal interest. The Fifth Circuit has adopted a "clearly erroneous" standard. *See United States v. Bagley, supra* at 166–67. The Second and Ninth Circuits have adopted an "abuse of discretion" standard. *See United States v. Guillette, supra* at 745; *United States v. Satterfield, supra* at 690. We are in agreement with the views expressed in the Fifth Circuit. The trial court's conclusion that a statement is against the declarant's penal interest is clearly a legal question. However, the determination of whether a statement was made and whether the declaration is trustworthy both involve the application of a legal standard to factual findings. The trial court must assess the credibility of the witness repeating the statement and examine all the evidence before ruling. Such a procedure is not unlike the factual and legal findings the trial court must make when considering issues such as voluntariness of a waiver of *Miranda* rights, *see, Peoples v. United States*, D.C.App., 395 A.2d 41, 43 (1978), voluntariness of confessions, *see Taylor v. United States*, 380 A.2d 989, 992 (1977), and the consent to search, *see Crisafi v. United States*, D.C.App., 383 A.2d 1, 4 (1978). Accordingly, in reviewing the trial court's ruling on the admissibility of declarations against penal interest, we will not disturb the trial court's findings unless they are clearly erroneous. *See* D.C.Code 1973, § 17–305(a).

## IV

■ In the present case, there exist a number of indications that appellant may be able to satisfy the foundational requirements for the admissibility of the proffered declarations against penal interest. When defense counsel informed the trial court that he intended to call Hale and Hammond as witnesses and would attempt to elicit from them certain information that might subject them to criminal liability, the trial court quite correctly appointed counsel to safeguard their rights. Despite defense counsel's repeated attempts during voir dire to question both Hale and Hammond, they invoked their privilege against self-incrimi-

nation and their invocation of the privilege was sustained by the trial court. Thus, Hale and Hammond were unavailable. *See Alston v. United States, supra.*

In addition, there exist a number of indications that the inculpatory declarations of Hale and Hammond were made under circumstances that would satisfy the criteria for corroboration we have set forth. Both Hale and Hammond made statements indicating that at least one or both of them had been in possession of fruits of the crime shortly after the robbery.[18] It is also undisputed that the car involved in the robbery belonged to Hammond's wife. Moreover, the police, despite a thorough investigation, were unable to make any connection between appellant and the two witnesses, Hale and Hammond. Finally, we note that the proffered declarations against interest were made to Detective Patterson in the course of his investigation of the offense.

In the present case, the trial court's rejection of the proffered statements against penal interest appears to have been based on previous decisions of this court, holding that the penal interest exception was not recognized in this jurisdiction. Accordingly, the trial court did not have the opportunity to apply the standards we have adopted herein. Moreover, since in every case the proper application of the evidentiary criteria set forth in Part III rests in the first instance with the trial court which must weigh the evidence and evaluate the credibility of the witness, we are of the opinion that a remand is appropriate for a determination of whether the proffered statements meet the standards for admissibility. If the trial court, after reviewing the evidence and applying the standards we have enunciated, concludes that the statements are admissible, the case shall be deemed remanded to permit the trial court without further order of this court to vacate appellant's conviction and grant a new

trial. Should the trial court conclude the statements are inadmissible, the record on appeal shall be supplemented by the evidentiary hearing and proceedings had pursuant to this remand and be promptly transmitted to the Clerk of this court for further review by the court.

*So ordered.*

NEBEKER, Associate Judge, with whom HARRIS, Associate Judge, and YEAGLEY, Associate Judge, Retired, join, concurring:

Toward the end of the court's opinion, and completely aside from its holding, advisory comment is offered respecting indicia of admissibility of Hales' and Hammond's statements. However, our holding leaves that question for the trial court on remand with the announcement that we will apply a clearly erroneous standard on review of appealable rulings on the subject. Since those observations are made, I am compelled to add an additional one. The statements in this case are a mixture. They inculpate in an incidental and indirect way by admitting to fraudulent use and possession of robbery proceeds. More significantly, they are exculpatory for it was asserted that the card was innocently come by—it was found in Hammond's stolen car when he and Hales recovered it themselves later on. Moreover, the statements were made to a police official whom they knew to be investigating the robbery. The gravamen of these statements was to deny implication in the robbery. Their trustworthiness thus could be deemed in grave doubt. In addition the question whether either declarant perceived the disserving quality of his statement is part of the overall inquiry as to a clear indication of trustworthiness. *See Declarations Against Penal Interest, Standards of Admissibility Under An Emerging Majority Rule,* 56 B.U.L.Rev. 148 (1976). The decision on admissibility, however, is the purpose of our remand.

---

18. It is well settled in this jurisdiction that possession of property taken in a robbery, within a short time after the robbery, if unexplained to the satisfaction of the jury, may be sufficient to warrant a conclusion that the possessor committed the robbery. *See, e. g., United States v. Wolford,* 144 U.S.App.D.C. 1, 8–12, 444 F.2d 876, 883–87 (1971); *Pendergrast v. United States,* 135 U.S.App.D.C. 20, 30–32, 416 F.2d 776, 786–88, *cert. denied,* 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969).

Our decision is limited. We adopt Fed.R. Evid. 804(b)(3) and a clearly erroneous review standard.