**James M. JACKSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 88–577.

District of Columbia Court of Appeals.

Submitted Feb. 20, 1992.

Decided March 17, 1992.

Andrew J.J. Delehanty, Washington, D.C., appointed by this court, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and SCHWELB, Associate Judge, and BELSON, Senior Judge.

ROGERS, Chief Judge:

Appellant James M. Jackson appeals his conviction by a jury of possession with intent to distribute phencyclidine (PCP) and possession with intent to distribute marijuana, D.C. § 33–541(a)(1) (1988 Repl.) on the grounds that the trial judge abused his discretion by suppressing various out-of-court statements against interest made by an unavailable witness. We affirm.

I

Three uniformed police officers, who were inside a parked, private van, saw a car stop by parking with a tire on the curb in the 1600 block of North Capitol Street around 7:30 p.m. on July 2, 1986. After three men got out of the car, the driver began removing plastic bags from the trunk that he gave to the other two men. As the police officers approached the car, one of the men yelled "police," and the three men ran. A subsequent search of the car revealed nine plastic packets containing PCP-laced marijuana, a jacket with a tin foil packet of PCP-laced marijuana in the pocket, and a black wallet with two identification cards with appellant's picture. Officer Jacobs identified appellant's picture as being that of the driver of the car.

During a pre-trial hearing, a defense witness, Philip Hobbs, waived his Fifth Amendment privilege and testified that he was in a car in the 1600 block of North Capitol Street around 7:30 p.m. on July 2, 1986. According to Hobbs, he got out of the car and "went into the trunk" where he knew there was a brown paper bag containing "some packets of PCP." The judge advised Hobbs that he could be charged with the crimes to which he was admitting, and informed him of the penalties he could face if convicted. Hobbs indicated that he still wished to waive his Fifth Amendment rights. The next day when Hobbs failed to appear in court, the judge issued a bench warrant for his arrest.

**46**

At the conclusion of the government's case-in-chief, defense counsel asked the trial judge for permission to introduce evidence of out-of-court declarations against interest which Hobbs had allegedly made to other persons. The judge concluded that Hobbs' other out-of-court declarations against interest were inadmissable because they lacked trustworthiness. However, the trial judge permitted the introduction of a stipulation setting forth Hobbs' testimony during the pre-trial hearing.[1]

The defense called appellant's mother as a witness. She testified that she often allowed Hobbs to use her car so that he could take appellant, her son, to work. Furthermore, she recalled allowing Hobbs to use the car on July 2, 1986, "so [he] could take [appellant] to work that evening."

The defense also called Mr. Smith and Mr. Manning. They testified that they were in appellant's mother's car during the July 2nd incident, and that Hobbs had driven the car to North Capitol Street, exited on the driver's side, and then removed drugs from the trunk of the car. Smith testified that Hobbs had stopped the car earlier that night on Staple Street where he had met a man who had escorted him into an alley. According to Smith, Hobbs thereafter emerged from the alley carrying a brown bag that he placed in the car trunk.

## II

In *Laumer v. United States*, 409 A.2d 190 (D.C.1979) (en banc), the court held that "a statement tending to expose [a] declarant to criminal liability and offered as tending to exculpate the accused is admissible when the declarant is unavailable *and* corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* at 199 (adopting Fed. R.Evid. 804(b)(3)) (emphasis in original). The rule the court adopted in *Laumer* "requires that the trial judge undertake a three-step inquiry to ascertain (1) whether the declarant, in fact, made a statement; (2) whether the declarant is unavailable;[2] and (3) whether corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* This court "will not disturb the trial court's findings unless they are clearly erroneous. *See* D.C.Code 1973, § 17-305(a)." *Id.* at 203.

Both parties acknowledge that the trial judge never inquired into whether Hobbs, the declarant, had in fact made the incriminating statements to other persons. However, the government maintains that this is of no import because the judge's ruling that the statements were inadmissible as untrustworthy can be viewed as assuming that the statements were made. However, the record would appear to present two problems with this approach. First, there is nothing in the record to indicate that the judge considered the relevant factors.[3] Second, the judge based his conclusion about untrustworthiness, at least in part, on a presumption that is contrary to *Laumer*.[4] Furthermore, the record indicates

1. The parties also stipulated to the fact that the car belonged to appellant's mother, Mrs. Barbara Jackson.

2. It is undisputed that Hobbs was unavailable since defense counsel tried but was unable to compel Hobbs' attendance through process or other reasonable means. *See* Fed.R.Evid. 804(a)(5).

3. In *Laumer, supra,* the court stated that in determining whether an out-of-court statement against interest is reliable, the trial court should consider the following factors:
    (1) the time of the declaration and the party to whom the declaration was made;
    (2) the existence of corroborating evidence in the case; [and]

(3) the extent to which the declaration is really against the declarant's penal interest....
409 A.2d at 200 (citing *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)).

4. The only reason that the trial judge gave for denying appellant's request was that Hobbs' decision during the pre-trial hearing to waive his Fifth Amendment right was so irrational and so much against his own interest that any similar statements to other individuals were untrustworthy. The judge's analysis presumed that statements more contrary to one's interest are less trustworthy. The en banc court suggested in *Laumer, supra,* however, that the opposite is true. 409 A.2d at 202 ("non-existence of potential criminal liability poses no deterrent to falsification"). In fact, the underlying rationale for

that the trial judge may have frustrated defense counsel's attempt to present evidence of corroborating circumstances of the out-of-court declarations.[5]

■ Nevertheless, we are satisfied that any error in applying *Laumer* was harmless. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Although Hobbs' out-of-court statements against interest to others were not admitted into evidence, Hobbs' testimony at the pre-trial hearing was admitted. Thus, from Hobbs' testimony, the jury knew that Hobbs admitted being in appellant's mother's car on the evening in question, knew about the drugs in the trunk, and went into the trunk after the car stopped on North Capitol Street. According to the defense proffer, the only additional information that would have been provided by the other witnesses is that Hobbs told them that "he had possession of ... drugs taken from an individual who owed him money, he put them in the [car], and he was going to pass them out once he got over to the 1600–block of North Capitol Street." The defense witnesses at trial provided this information to the jury. Smith testified that he saw Hobbs enter an alley with a man, come out with a brown bag and put the bag in the trunk. This testimony, in connection with the fact that the controlled substances were found in a brown paper bag in the trunk of the car, suggests that Hobbs may have acquired the controlled substances from a man on the street. Furthermore, the testimony of Smith and Manning that Hobbs drove them to the 1600 block of North Capitol and began handing out the controlled substances suggests that Hobbs intended to pass drugs out at the 1600 block of North

Capitol Street. Hearsay testimony that Hobbs also conveyed in words what his conduct already suggested would have been cumulative.

The defense witnesses at trial—Smith, Manning, and appellant's mother—put Hobbs at the scene, made him culpable for the crimes with which appellant was charged and exculpated appellant. Hence, the exclusion of the out-of-court declarations did not hinder the defense in presenting its theory of the case.

Accordingly, we affirm the judgment.

---

the statement against interest exception to the hearsay rule is that:

> [t]he trustworthiness of declarations against penal interest arises from common experience and our intuitive notions that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examination are wanting.

*Id.* at 196 (citation and internal quotation omitted).

5. During the hearing, the judge interrupted defense counsel in mid-sentence, and denied the defense request, just as counsel was apparently about to address the circumstances surrounding the statements in question. Before being interrupted appellant's counsel said:

> Your Honor, we do have the fact that he has been telling us all along. This is not something that's new. He told it to an investigator of mine in the very beginning of the case; he has been telling it to me and other individuals—