**Julius P. LYONS and Dino Allen, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 83–1315, 83–1476.**

District of Columbia Court of Appeals.

Argued Sept. 30, 1985.

Decided Aug. 26, 1986.

Marion E. Baurley, Washington, D.C., appointed by the court, for appellant Lyons.

Kathleen G. Gallagher, Washington, D.C., for appellant Allen.

John M. Facciola, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Charles L. Hall, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, BELSON, and STEADMAN, Associate Judges.

BELSON, Associate Judge:

Appellants Julius P. Lyons and Dino Allen were convicted of burglary in the first degree while armed, D.C.Code §§ 22–1801(a), –3202 (1981) and two counts of armed robbery, id. §§ 22–2901, –3202, committed on January 29, 1982 (the Alexander incident). In addition, appellants were convicted of burglary in the first degree while armed, id. §§ 22–1801(a), –3202, and armed robbery, id. §§ 22–2901, –3202, committed on February 19, 1982 (the Patterson incident). On direct appeal, Lyons' principal challenge is to the admission into evidence of a self-inculpatory statement by an alleged accomplice which implicated Lyons as well. We agree that the admission of the statement on this record was erroneous, but hold the error harmless under the circumstances. Both appellants argue they are entitled to reversals of their convictions because of alleged misjoinder. We disagree with that contention as well as the other arguments appellants advance and, therefore, affirm.

## I

According to Ronald Curvey, who shared an apartment with Irby Alexander and Marie Washington, the Alexander apartment burglary occurred in the following manner.[1] The 17–year–old Washington came to the apartment building, and Curvey permitted her to enter when he opened the door to admit a friend, Reginald Butler. When Washington expressed interest in seeing Irby Alexander, Curvey told her Alexander was not home. Washington asked Curvey if she could use the bathroom, and Curvey let her into the apartment unit itself. After leaving the bathroom, Washington asked Curvey if Alexander had any LSD. Curvey said he did not know and was not involved with LSD. Shortly thereafter, Curvey unlatched the apartment door to permit Washington to leave, whereupon appellants and their confederates forced their way into the apartment. Appellant Allen had a gun. The burglars proceeded to rob Curvey and Butler of a variety of items, including cameras, clothes, money, and drugs. In particular, Butler's down coat was stolen. The burglars repeatedly demanded to know where the "stuff" was, and asked when Alexander was returning. On at least one occasion, one of the burglars threatened to kill Curvey and Butler if not informed where the "stuff" was located. Andre Lyons, appellant Julius Lyons' younger brother, identified the burglars as himself, appellants, Jerome Stewart, Steve Ahlsen, and Romin Williams.[2]

About three weeks later and a block away, Harry Patterson answered a knock on the door at his apartment. Robin Cathcart, Patterson's neighbor, asked to use Patterson's phone on the pretext that Cathcart had locked himself out of his apartment. Patterson let Cathcart in, left the door to his apartment open, and "went to get the phone" for his neighbor. When Patterson returned, two men, one brandishing a pistol, forced Patterson to retreat to his bedroom, while they proceeded to ransack his apartment and steal a small amount of cash. The intruders demanded to know where "the money" and "the dope" were.

1. Marie Washington testified after being permitted to plead guilty to the lesser offense of attempted robbery.

2. Andre Lyons was not prosecuted at all in return for his agreement to testify in this case.

Two of Patterson's neighbors, Nikkia Miller and Jerome Williams, testified that they observed a group of five or six men congregate in the alleyway near Patterson's apartment the day of the robbery. Miller and Williams also reported that they saw the group enter the apartment building, though neither was in a position to see what the men did while inside. Miller told the police that Cathcart had beckoned the other men to go inside the apartment building. According to Patterson, the sound of a police helicopter overhead prompted the burglars to flee. Cathcart did not flee. The police apprehended appellants and Ahlsen, and returned them to the scene of the crime. Patterson positively identified Lyons, said Allen looked familiar, and thought the down jacket Ahlsen was wearing looked slightly familiar.

Alexander, whose apartment had been burglarized about three weeks earlier, positively identified as his the down coat recovered from Ahlsen following the Patterson incident.

Appellants, along with Stewart, were tried for both the Alexander and Patterson incidents. Lyons presented no defense with respect to either. Allen presented an alibi defense to the Patterson incident, but no defense to the Alexander incident.

Stewart gained an acquittal by direction of the trial court with respect to the Patterson incident, and a hung jury with regard to the Alexander incident. Ahlsen fled the country before trial. Cathcart was tried separately. Romin Williams was not indicted.

## II

Appellant Lyons argues that the trial court committed reversible error in permitting, over objection, Detective Gary Queen to testify that Romin Williams, an unindicted accomplice, had implicated himself in the Alexander incident of January 29, 1982.[3] This admission by Williams was introduced in the wake of the testimony of government witnesses Marie Washington and Andre Lyons, appellant's brother, that Williams was involved in the Alexander incident, along with appellants. Our first task in reviewing this point is to determine whether the trial court erred in admitting Williams' statement under the declaration against penal interest exception to the hearsay rule, as codified by Fed.R.Evid. 804(b)(3)[4] and embraced by this court in *Laumer v. United States*, 409 A.2d 190, 199 (D.C.1979) (en banc).[5]

We start with a review of the relevant portions of the trial transcript. The first

---

3. Appellant Allen objected at trial, but does not raise the issue on appeal.

4. Fed.R.Evid. 804(b)(3) reads as follows:
    (b) Hearsay exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
    (3) Statement against interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

5. We observe that we are satisfied that the admitted statement by Romin Williams was both material and relevant to appellant Lyons' guilt

in connection with the January 29, 1982, Alexander incident. "Relevant evidence is that which tends to make the existence or nonexistence of a fact more or less probable than would be the case without that evidence." *Punch v. United States*, 377 A.2d 1353, 1358 (D.C.1977), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). Romin Williams' statement implicating himself in the incident lent credence to the testimony of government witnesses Marie Washington and Andre Lyons, who testified that Williams was involved. The fact that Marie Washington's and Andre Lyons' version of what happened was partially corroborated made it more likely that their entire story, including their implication of appellant Lyons, was truthful and accurate. While the logical inferences drawn above need not have been drawn by the jury, the inferences are reasonable and, consequently, the admissibility of the statement cannot be criticized on materiality or relevance grounds.

passage reveals how Romin Williams' admissions of participation in the Alexander incident came into evidence:

Q. [CHARLES HALL, Assistant U.S. Attorney]: Sir, can you tell me whether or not you had occasion to take a statement from a person by the name of Romin Williams?

A. [DETECTIVE GARY QUEEN]: Yes, I did.

Q. Did you take that statement, sir, in April of 1982?

A. Yes, I did.

Q. Can you tell us whether or not you asked Mr. Williams whether he was involved in this particular crime?

A. Yes.

Q. What did Mr. Williams tell you?

MR. DeBERARDINIS [Allen's counsel]: Objection.

MR. McHALE [Lyons' counsel]: Hearsay.

THE COURT: Overruled.

BY MR. HALL:

Q. What did Mr. Williams tell you?

A. He said, yes, he was.

MR. HALL: No further questions, Your Honor.

The second important passage shows the use the prosecution made of Williams' admission in closing argument:

[BY MR. HALL]: Now, ladies and gentlemen, I would suggest to you further that you recall the testimony of Detective Queen because he told us something that corroborates—helps to corroborate what Marie Washington and Andre Lyons told you and that is that he told us he talked to Ron [sic] Williams, the individual that Ms. Washington and Andre Lyons said was also with them at the time they committed the burglary and robbery on January 29.

Jerome [sic] Williams told Detective Queen that in fact he was with the peo-ple and he did participate with the people. They committed the burglary and robbery at 1313 Columbia Road, Northwest, on January 29.[6]

The third and final passage which deserves attention is the colloquy between Lyons' counsel and the trial court regarding the prosecution's reference to the Williams admission in closing argument, for it sheds light on the trial judge's reasoning in permitting the admission to come into evidence.

MR. McHALE [Lyons' Counsel]: Your Honor, I want to suggest that in Mr. Hall's closing he made an improper use of one bit of evidence that came in and that is as follows:

In referring to the January 29 offense, he suggested that the statement of Romin Williams given to the detective out of court, uncross-examined by any counsel, corroborates the version of that offense given in court by Marie Washington. In effect he is arguing the truth of that out-of-court statement to corroborate what was in-court. If I recall the defense had objected.

THE COURT: There was an objection. I overruled the objection on hearsay grounds. I overruled it because it is clear Romin Williams was unavailable to testify since he is now a subject of the Grand Jury proceeding. It is a declaration against penal interest. Given the fact that I know that it was also given under oath in the Grand Jury, it has all the indicia of reliability. That is why I overruled the objection. That is, it is evidence and admissible on the point being that he admitted that he was involved. It is a declaration against penal interests and under the law of this jurisdiction is admissible.

Mr. Hall's argument as I heard it was given that admission, it gives no [sic][7]

---

**6.** When read in context, the references to Ron and Jerome Williams are to the same person, also known as Romin Williams.

**7.** The reporter may have made an error in transcription in reporting a "no" where the word "more" would make far better sense in context.

credence as to witnesses who testified here.

■ We turn now to consider the state of the law in this jurisdiction on the admissibility of declaration against penal interest. The leading case on this issue is *Laumer, supra.* There, this court announced that it would no longer adhere to the traditional rule against admitting any declarations against penal interest. *Id.* at 195–199. The court adopted the approach of Fed.R.Evid. 804(b)(3) as the new standard for determining the admissibility of statements against the declarant's penal interest offered to *exculpate* the accused. *Id.* at 199.[8] Here, however, we are confronted squarely with a case of first impression since the promulgation of the Federal Rules of Evidence and the *Laumer* decision—the introduction of a statement against the declarant's penal interest tending to *inculpate* appellant Lyons. For the reasons set forth below, we follow the approach set forth in Fed.R.Evid. 804(b)(3) for purposes of determining the admissibility of declarations against penal interest by another offered to inculpate, as well as exculpate, defendants.

Our decision to follow the approach set forth in Fed.R.Evid. 804(b)(3) to both exculpatory and inculpatory declarations is based on our judgment that the approach is equally valid for both types of declarations.[9]

We perceive no reason why declarations against penal interest offered to inculpate a defendant are inherently less reliable than those offered to exculpate a defendant. Moreover, the rule's limitation of admissibility to only those statements that a reasonable man would not make unless true helps to assure that a reasonable degree of trustworthiness of the declaration be established prior to introduction into evidence. This, of course, is the primary concern whenever a party seeks admission of a hearsay statement. We are bolstered in our view of the appropriateness of this rule for evaluating both exculpatory and inculpatory declarations against penal interest by the example of three Circuit Courts of Appeals which have taken the same approach. *See United States v. Coachman,* 234 U.S.App. 194, 197, 727 F.2d 1293, 1296 (1984); *United States v. Riley,* 657 F.2d 1377, 1381–83 (8th Cir. 1981), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983); *United States v. Alvarez,* 584 F.2d 694, 700–01 (5th Cir. 1978).

■ In *Laumer,* conformably with Fed.R.Evid. 804(b)(3), we identified a 3–step inquiry that the trial court must make before admitting an exculpatory statement against penal interest. The judge must "ascertain (1) whether this declarant, in fact, made a statement against penal interest; (2) whether the declarant is unavailable; and (3) whether corroborating circumstances clearly indicate the trustworthiness of the statement." *Laumer,* 409 A.2d at 199. The facts of this case do not require us to reach the question of whether

8. The text of Fed.R.Evid. 804(b)(3) is set forth in note 4, *supra.*

9. It is unclear from the text and legislative history of Fed.R.Evid. 804(b)(3) whether Congress intended the rule to cover inculpatory, as well as exculpatory, statements against penal interest. This subject has engendered considerable scholarly debate. 4 J. Weinstein & M. Berger, *Weinstein's Evidence* 804(b)(3)[03], at 150–157 (1985) (concludes rule was not intended to cover inculpatory statements); Tague, *Perils of the Rulemaking Process: The Development, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception,* 69 Geo.L.J. 851, 892–99 (1981) (notes text of rule is silent regarding admissibility of inculpatory statements); Com-

ment, *Federal Rule of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest,* 66 Calif.L.Rev. 1189 (1981) (concludes rule was intended to cover inculpatory statements).

We need not resolve this question, because this court is neither bound to follow Congress' lead if Fed.R.Evid. 804(b)(3) was intended to cover inculpatory statements, nor precluded from adopting the rule, on its merits, to cover inculpatory statements even if Congress has not done so. The critical inquiry, therefore, is whether this court *should* extend the application of Fed.R.Evid. 804(b)(3) beyond that announced in *Laumer* to encompass inculpatory statements against penal interest.

the "corroborating circumstances" requirement of *Laumer* and Fed.R.Evid. 804(b)(3) should apply to inculpatory statements.[10] Without addressing that issue, we hold that before admitting an inculpatory statement under the penal interest exception, a trial court must ascertain whether the declarant made a statement against penal interest and whether the declarant is unavailable. Applying this standard to the case at bar, we observe that the trial court failed to ascertain whether Williams was truly unavailable as a witness, a prerequisite for the admission of any statement against penal interest as an exception to the hearsay rule. Indeed, the trial judge's only reference to the issue of availability came after the prosecution's closing argument, not at the time when Williams' statement was admitted over defense counsel's objection: "I overruled it [the objection] because it is clear Romin Williams was unavailable to testify since he is now a subject of the Grand Jury proceeding." [11]

■ It is impossible to know whether the trial judge's confidence that Romin Williams would have declined to testify regarding his participation in the Alexander incident was misplaced or was justified. What is certain is that the judge's subsequent appraisal was not an adequate substitute for the sort of ruling on availability called for under Fed.R.Evid. 804(a)(1) and (b)(3). Specifically, Fed.R.Evid. 804(a)(1) defines unavailability to include situations in which a declarant "is exempted by ruling of the court on the ground of privilege." The government contends that the trial court's ruling of unavailability can be upheld as falling within this type of situation. The advisory committee note accompanying Fed.R.Evid. 804(a)(1) stresses, however, that because a ruling by a judge is required, the rule "clearly implies that an actual claim of privilege be made." No such claim of privilege was asserted in this case. Moreover, the trial court's confidence that Williams would not have testified is undercut by the fact that Williams consistently and repeatedly admitted his involvement in the Alexander incident from the time of his arrest for that involvement. We hold that, under the circumstances, the trial court erred in finding Williams to have been unavailable.

Because we find the trial court erred in its ruling on unavailability, we need not reach the issues of whether the statement was against penal interest or sufficiently corroborated, assuming the latter requirement applies.[12]

**10.** The language of the final sentence of Fed.R. Evid. 804(b)(3) is such that it obviously raises questions concerning its applicability to instances in which the declarant's statement is used to inculpate. That sentence reads: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Two of the three Circuit Courts of Appeals decisions cited above hold that the final sentence of Fed.R.Evid. 804(b)(3) should apply to inculpatory statements. *Riley,* 657 F.2d at 1383; *Alvarez,* 584 F.2d at 701. Although the facts of this case do not make it necessary for us to rule whether the corroborating circumstances prong of Fed.R.Evid. 804(b)(3) should apply to inculpatory as well as exculpatory statements against penal interest, we observe that the approach taken in *Riley* and *Alvarez* seems sound. The third paragraph of the advisory committee note accompanying Fed.R.Evid. 804(b)(3) states that the corroboration requirement was intended to prevent fabrication. We are inclined to think that this protection appropriately applies at least as forcefully to inculpatory statements as it does to exculpatory statements, because of the danger of admitting fabrications into evidence which cannot, by definition, be confronted through cross-examination.

**11.** The trial judge apparently knew that Williams' plea agreement had broken down in the wake of Williams' exculpatory testimony at an earlier trial of Lyons and Allen only in connection with another armed robbery. This testimony conflicted with Williams' grand jury testimony inculpating appellants. The government instituted grand jury proceedings against Williams after the plea agreement broke down.

**12.** While we recognize that our holding in *Laumer* did not afford the trial court specific guidance with respect to the applicability of the standards of Rule 804 to inculpatory statements, it seems to us apparent that the requirement of the unavailability of the declarant should apply at least as strongly to statements that serve to inculpate the defendant as to exculpatory statements.

■ While the court erred in admitting Romin Williams' statement without inquiring further into the availability of Williams as a witness, we are satisfied that the admission of the statement did not violate appellant's Sixth Amendment right of confrontation.[13] The record clearly reflects the limited use the government made of Williams' statement. Specifically, the prosecutor's only reference to the statement was to argue that it corroborated the accounts of the Alexander incident given by government witnesses Marie Washington and Andre Lyons, which it surely did. The prosecutor did not use Williams' statement to implicate appellant directly in the Alexander incident. Thus, Williams' statement here was a far cry from the "powerfully incriminating extrajudicial statements" held to violate the Confrontation Clause in *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476. *See also United States v. Winley*, 638 F.2d 560, 562–63 (2d Cir.1981), *cert. denied*, 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982) (court ruled it did not need to address confrontation clause claim where guilty pleas in robbery, redacted to omit any reference to defendant, were introduced to corroborate co-conspirator's testimony, which did directly implicate defendant; guilty pleas "neither crucial nor devastating" evidence).

■ Having determined that the trial court's evidentiary error in admitting Williams' hearsay statement was not of constitutional magnitude, we turn finally to decide whether Judge Shuker's error was harmless within the meaning of *Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946). Our analysis of the record convinces us that it was.

The impact, if any, on the jury of the trial court's error was probably slight. As discussed above, the prosecution made only one brief reference to Williams' statement, in keeping with the fact that the statement did not directly inculpate appellant, but instead touched upon the peripheral matter of Williams' own role in the Alexander incident. Moreover, the government's case against appellant Lyons would have been very strong, even if Williams' statement had not been admitted. Perhaps the most damaging piece of evidence against appellant, aside from the testimony of Marie Washington and Andre Lyons, is that when appellant was apprehended on the night of the remarkably similar Patterson incident, his cohort Steve Ahlsen was wearing the jacket stolen during the Alexander incident. Both incidents occurred within about three weeks and one block of one another, both involved the use of a ruse to get the victim's door open, and both were motivated by a desire to rob suspected drug dealers. Furthermore, the government introduced evidence that the two incidents had four participants in common: appellants Stewart and Ahlsen. The jury found appellant guilty of participating in the Patterson incident on the basis of evidence, including a positive identification by the complainant within minutes of the crime, the sufficiency of which appellant does not even contest. The jacket worn by Ahlsen at the Patterson incident neatly linked the participants in that incident, including appellant, with the very similar Alexander incident, in which the jacket had been stolen. The tell-tale jacket provided ample corroboration of the testimony of Marie Washington and Andre Lyons placing appellant at the scene of the Alexander incident. Thus, the jury's verdict did not hinge on the erroneous admission of Romin Williams' statement to Detective Queen. In light of the foregoing, we hold that the trial court's error was harmless.

---

**13.** It is important to note that some inculpatory statements may pass muster under Fed.R.Evid. 804(b)(3), yet lack the requisite degree of reliability to satisfy the confrontation clause. *See, e.g.*, Fed.R.Evid. 804(b)(3) advisory committee note, ¶ 4 ("[t]he rule does not purport to deal with questions of the right of confrontation"); *United States v. Coachman*, 234 U.S.App. at 198 & n. 12, 727 F.2d at 1297 & n. 12.

## III

■ Appellants contend for the first time on appeal that the joinder of defendants Allen, Lyons, Jerome Stewart and Steve Ahlsen with respect to offenses occurring on January 29, 1982 (the Alexander incident), with defendants Allen, Lyons, Stewart, Ahlsen, and Robin Cathcart with respect to February 19, 1982 (the Patterson incident), violated Super.Ct.Crim.R. 8(b).[14] Because appellants failed to file a timely request for severance of defendants on Rule 8(b) grounds, appellants waived any Rule 8(b) objection they might have had. *Evans v. United States*, 392 A.2d 1015, 1022–23 (D.C.1978).

■ Appellant Allen further contends that the trial judge erred in denying his Super.Ct.Crim.R. 14 motion for discretionary severance.[15] Allen alleged that the joinder of *counts* relating to the Alexander and Patterson incidents was prejudicial to him because it might deter him from testifying about the Alexander incident, while remaining silent on the Patterson incident. The standard of review on appeal for the denial of a Rule 14 motion is whether the trial court committed an abuse of discretion. *Sweet v. United States*, 438 A.2d 447, 450 (D.C.1981). As Allen conceded in his motion for severance, at the trial level the burden was on him to "make a convincing showing that he [had] both important testimony to give concerning one count and a strong need to refrain from testifying as to the other." *Baker v. United States*, 131 U.S.App.D.C. 7, 25–6, 401 F.2d 958, 976–77 (1968), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). Allen, however, failed to articulate convincing reasons why, or even express certainty that, he needed to testify regarding the Alexander incident, but not the Patterson incident. Thus, the trial judge's denial of appellant's Rule 14 motion was well within his discretion.

## IV

■ Appellant Allen insists that the trial court erred in denying his motion to suppress Patterson's show-up identification of him. It is true that appellant was handcuffed and in police custody when the show-up occurred. These factors do not, however, require suppression of show-up identifications. *Fields v. United States*, 484 A.2d 570, 574 (D.C.1984). In view of the promptness of the show-up (approximately 20 minutes from time of crime), the trial court's finding of no impermissible suggestivity is not clearly erroneous, and we decline to disturb it on appeal.

■ We also reject appellant Allen's contention that the show-up identification should have been suppressed because the show-up was not necessary. Notwithstanding appellant's view that show-ups are permissible only where they are necessary, this court has noted in *Singletary v. United States*, 383 A.2d 1064, 1068 (D.C.1978) (citations omitted), that "an immediate on-the-scene confrontation has uniquely powerful indicia of reliability which more than counterbalance any suggestivity, absent special elements of unfairness." Having upheld the trial court's finding of no impermissible suggestivity, we affirm the trial

**14.** Super.Ct.Crim.R. 8(b) reads as follows:
(b) JOINDER OF DEFENDANTS. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

**15.** Super.Ct.Crim.R. 14 reads as follows:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the prosecutor to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

court's denial of appellant's motion to suppress show-up identification testimony.

## V

 Appellant Allen contests the denial of his pretrial motion to suppress tangible evidence, consisting of clothing, including a ski mask, and money, seized from Allen's person and automobile following his arrest and detention on February 19, 1982. The investigatory stop of Allen conformed to the requirements of *Terry v. Ohio*, 392 U.S. 1, 29–30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). The police officers who apprehended Lyons had solid grounding for a reasonable and articulable suspicion that criminal activity was afoot. The area involved was known to be a place where burglaries were frequent. One witness reported a group of men whose manner of entry, exit and re-entry of the building where the robbery occurred was suspicious. This same witness observed that one of the men was wearing a ski mask. A second witness alerted police to what he considered suspicious activity in the vicinity of Allen's car, which was located about 50 yards from the building where the robbery took place. A police officer discovered a displaced skylight in the building. Appellants, including Allen, were observed fleeing the building, and were apprehended a short distance away after attempting to evade the police. Under the circumstances, there is no doubt that Allen's seizure was lawful. Once complainant Patterson identified Allen, even if only tentatively, in the show-up discussed earlier, there undoubtedly was probable cause for arrest. Since appellant challenges only the validity of his detention and arrest, but does not question specifically the search incident to the arrest, our conclusion that Allen's detention and arrest were lawful disposes of the Fourth Amendment issue raised on appeal.

## VI

 Appellant Lyons seeks reversal on the basis of several alleged instances of prosecutorial misconduct. Only one such example need detain us briefly. Lyons likens the prosecutor's comments in closing argument that "[i]t is your city" to the prosecutor's request in *Powell v. United States*, 455 A.2d 405, 410 (D.C.1982) that the jury "send a message," a request this court termed "irrelevant and inappropriate." Since appellant did not object at trial to the comment at issue in this case, the standard of review is plain error. *Logan v. United States*, 489 A.2d 485, 488 (D.C. 1985). Given that the admittedly irrelevant and inappropriate comment by the prosecutor in this case was isolated (distinguishing *Powell*, 455 A.2d at 408), the trial court's instructions to the jury that counsel's remarks are not evidence, and the overall strength of the government's case, we do not discern plain error here. Appellant Lyons' remaining complaints of prosecutorial misconduct are without merit.

*Affirmed.*