**UNITED STATES, Appellant,**

v.

**Navarro HAMMOND, Appellee.**

**UNITED STATES, Appellant,**

v.

**Chester C. WRIGHT, Appellee.**

**Nos. 94–CO–1411, 94–CO–1412.**

District of Columbia Court of Appeals.

Argued April 22, 1996.
Decided Aug. 15, 1996.

Roy W. McLeese, III, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Assistant United States Attorney, were on the brief, for appellant.

Christopher S. Merriam, with whom Shawn Moore was on the brief, Washington, DC, for appellee Navarro Hammond.

Larry Gordon, for appellee Chester C. Wright.

Before WAGNER, Chief Judge, and SCHWELB and KING, Associate Judges.

SCHWELB, Associate Judge:

The United States has appealed from several evidentiary rulings in which the trial judge redacted portions of various statements offered against appellees Hammond and Wright under the exception to the hearsay rule for declarations against penal interest. The proffered statements were made by the appellees' former co-defendants, and the redacted portions refer to the alleged criminal conduct of third parties, including Hammond and Wright. The government contends that the trial judge erroneously interpreted *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), as establishing a categorical rule that a declarant's references to the criminal conduct of others can never be against the penal interest of the declarant.

Hammond challenges the court's jurisdiction to hear this appeal. On the merits, both Hammond and Wright argue that the trial judge correctly applied the principles set forth in *Williamson*. We conclude that this appeal is properly before us, and that the trial judge misconstrued *Williamson* as creating a *per se* rule barring admission, under the hearsay exception for declarations against penal interest, of any statement which refers to the criminal conduct of a third party. We therefore reverse the orders appealed from and remand for further proceedings consistent with this opinion.

## I.

### THE TRIAL COURT PROCEEDINGS

On June 29, 1992, Hammond and Wright were charged in a ten-count indictment with,

*inter alia,* the premeditated murder of correctional officer Ronald Richardson on October 7, 1991.[1] The indictment charges that Hammond and Wright, along with former co-defendants Sweet, Pleasant, and Page, conspired to murder Richardson to prevent him from testifying against Page in a criminal case.

During the course of pretrial proceedings, the government sought to introduce into evidence, under the exception to the hearsay rule for declarations against penal interest, various statements which were made by appellees' former co-defendants and which implicated Hammond and Wright in Richardson's murder. The trial judge directed the parties to file submissions regarding the admissibility of the statements, and she heard oral argument on the issue during an extended pretrial hearing. The judge orally ruled on the admissibility of most, but not all, of the proffered statements. Specifically, the judge made the following rulings:

1. Sweet's statement to a police detective that he was a "hit man" and that he had committed murder before was admitted, but the portion of Sweet's statement which indicated that he was a hit man for Hammond was redacted.

2. Sweet's statement to a civilian witness that he shot Richardson in the body with a .380 caliber handgun was admitted, but the portion of Sweet's statement which declared that Wright also shot Richardson in the head was redacted.

3. Pleasant's statement to his cousin that he drove the shooters in a van to the scene of the murder was admitted, but the following portions of the statement were redacted: a) that Sweet and Wright were the shooters whom Pleasant drove to the scene; b) that Pleasant waited for Sweet and Wright while the two men committed the murder; c) that Pleasant drove Sweet and Wright away from the scene; and d) that Sweet and Wright should "take their beef" because Pleasant wasn't the trigger man.

4. The word "we" was redacted from Pleasant's statement to his cousin that "we got one around your way."

5. The portions of Sweet's statement to a civilian witness which described his own role in Richardson's murder were admitted, but the portions referring to the conduct of Wright and Pleasant were redacted.

This appeal followed.

## II.

### APPEALABILITY

Hammond contends that we should not reach the merits of this appeal because the government is not seeking review of specific trial court rulings, but rather is prematurely asking this court for an advisory interpretation of *Williamson, supra.* Hammond's jurisdictional challenge is twofold. First, he claims that the government has failed to identify specific pieces of evidence excluded by the trial judge, and draws our attention to the fact that the government noted this appeal before the judge had ruled on all of the proffered statements. Second, with respect to the statements already ruled on, Hammond argues that, even if the trial judge's interpretation of *Williamson* was erroneous, "there is no evidence that after a remand, [the trial judge's] rulings would or should be any different."

 Section 23–104 (a)(1) of the District of Columbia Code authorizes the government to appeal before trial from an order which

> suppresses evidence, or otherwise denies the prosecutor the use of evidence at trial, if the United States Attorney ... conducting the prosecution ... certifies to the judge ... that the appeal is not taken for purpose of delay and the evidence is a substantial proof of the charge pending against the defendant.

D.C.Code § 23–104(a)(1) (1996). In this case, the trial judge has orally ruled on the admissibility of several of the proffered state-

---

1. Three other men, Bradley Sweet, Michael Page, and Terry Pleasant, were also named in the indictment. The charges against Sweet and Pleasant were severed from those against the two appellees, and Sweet and Pleasant were subsequently convicted at trial. The charges against Page were dismissed without prejudice.

ments, and has held that certain portions of them will not be received in evidence. The statute authorizes the United States to appeal under these circumstances regardless of whether or not the judge has ruled on the admissibility of all of the evidence as to which the parties disagree. So long as the statutory elements are satisfied with respect to the challenged rulings, the statements on which the judge has not yet ruled are irrelevant for purposes of this appeal.

The United States Attorney certified to the trial judge that appeal was not being taken for the purpose of delay, and that the rulings that the judge has made will result in the exclusion of evidence which constitutes "substantial proof" of the charges pending against Hammond and Wright.[2] This certification is all that the jurisdictional statute requires. *See District of Columbia v. McConnell,* 464 A.2d 126, 128 (D.C.1983) (holding that "the government may appeal [from] any pretrial evidentiary ruling excluding or suppressing evidence, provided that the terms of Section 23–104(a)(1) are met, *i.e.,* the government must [make the proper certification].").[3]

Hammond's second argument is more troubling. The government challenges the trial judge's legal ruling, *i.e.,* her interpretation of *Williamson,* but does not ask us to decide on this appeal whether the evidence is admissible. Rather, the government seeks a remand with directions to the judge to reconsider the admissibility of the proffered statements and to apply the correct legal standard.

"[T]he legislative history of [Section 23–104(a)(1)] provides for liberal construction of the phrase 'or otherwise denies the prosecutor the use of evidence at trial.'" *Id.* at 129; *see also United States v. Jones,* 423 A.2d 193, 195 (D.C.1980). In this case, the judge's rulings had the immediate effect of denying the prosecutor the use at trial of the redacted portions of the proffered statements. *Compare United States v. Shields,* 366 A.2d 454, 456 (D.C.1976) (Section 23–104(a)(1) not applicable where the trial judge's ruling, made in the course of granting a severance motion, had no "law-of-the-case effect at a subsequent trial" and was merely "an advisory opinion on [the] admissibility of evidence if offered at trial"). If the government had not appealed when it did, the trial would have proceeded, and the portions of the statements which incriminated Wright and Hammond would have been excluded. Although, even under these circumstances, the government might perhaps have taken steps to make the appeal more concrete in character, we conclude that the case is nevertheless ripe for appellate consideration.[4]

We recognize that, in enacting Section 23–104(a)(1), "Congress did not intend [to authorize] appellate 'dress rehearsals' of any and all evidentiary issues." *McConnell, supra,* 464 A.2d at 130. Nevertheless, Congress did intend "to implement a procedure whereby the government may appeal significant adverse evidentiary rulings before trial, without which appellate review is plainly foreclosed." *Id.* Giving the statutory language a liberal construction, as we must, we hold that the trial judge's rulings are appealable under Section 23–104(a)(1), notwithstanding the

---

**2.** Hammond concedes, as he must, that the United States Attorney's certification may not be challenged on appeal. *United States v. Jackson,* 441 A.2d 937, 939 (D.C.1982).

**3.** We note, however, that successive appeals are not favored, and that prosecutors should certainly be encouraged, where possible, to incorporate into a single pretrial appeal all of the evidentiary rulings with respect to which a ruling from this court will be sought. This is especially important in cases such as this one, in which the crimes with which Hammond and Wright are charged are alleged to have been committed almost five years ago.

**4.** It is not at all clear that the portions of the statements which the government seeks to intro-

duce would be admissible even under the *Williamson* standard, correctly applied. If the government had proffered, to this court as well as to the trial court, the evidence it proposed to adduce at a *Williamson*-type hearing in order to show that the portions of the statements incriminating Wright and Hammond were against the declarant's penal interest, this court would be in a position to address on this appeal not only the question whether the trial judge applied the correct standard, but also the sufficiency under *Williamson* of the facts so proffered. Nevertheless, construing the statute liberally, we believe that its requirements have been satisfied even without this additional step.

possibility that the evidence may ultimately be excluded at trial under the correct standard. A contrary reading would run afoul of "the policy expressed by Congress in favor of facilitating government appeals" under Section 23–104(a)(1). *Id.* (quoting *United States v. Barletta,* 644 F.2d 50, 60 (1st Cir.1981)).

## III.

## THE DECLARATION AGAINST PENAL INTEREST EXCEPTION

### A. *Williamson.*

In *Laumer v. United States,* 409 A.2d 190 (D.C.1979) (en banc), this court adopted the declaration against penal interest exception to the hearsay rule. We held that "a statement tending to expose the declarant to criminal liability and offered as tending to exculpate the accused is admissible when the declarant is unavailable *and* corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* at 199 (emphasis in original). We "adopt[ed] the test contained in Fed.R.Evid. 804(b)(3)," *id.,* and later adhered to that approach "for purposes of determining the admissibility of declarations against penal interest by another offered to inculpate, as well as [to] exculpate, defendants." *Lyons v. United States,* 514 A.2d 423, 428 (D.C.1986). *Laumer* and *Lyons,* however, did not decide "whether *all* of a statement containing a declaration against penal interest is admissible." *Laumer,* 409 A.2d at 203 (emphasis added) (noting disagreement among authori-

ties regarding whether collateral or exculpatory portions are admissible).

The Supreme Court recently had occasion to address this issue in *Williamson, supra.* There, the police found cocaine during a consensual search of Harris' car. During subsequent custodial interrogation, Harris made several statements to an agent of the Drug Enforcement Administration (DEA) which implicated him and his co-conspirator, Williamson. At Williamson's trial for, *inter alia,* conspiracy to possess cocaine with intent to distribute it, the district court permitted the DEA agent to testify to Harris' confession in its entirety. —— U.S. at —— - ——, 114 S.Ct. at 2433–34. The United States Court of Appeals for the Eleventh Circuit affirmed, 981 F.2d 1262 (1992), but the Supreme Court reversed this ruling on the ground that "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts." —— U.S. at ——, 114 S.Ct. at 2435.[5] "[T]he most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Id.*

■ Although *Williamson* made it clear that non-self-inculpatory declarations are not admissible under Rule 804(b)(3), the majority opinion is arguably somewhat ambiguous as to whether references to the criminal conduct of a third party can ever be self-inculpatory as to the declarant.[6] The parties

---

**5.** Justice O'Connor wrote an opinion which was joined by a majority of the Court, except as to Part II.C. In that section, Justice O'Connor, joined only by Justice Scalia, concluded that the case should be remanded for reconsideration of the proffered statements in light of the principles announced in Parts II.A and II.B. Part II.C nevertheless states the Court's holding because the three dissenting justices agreed that the case should be remanded for a "factbound determination" of the admissibility of Harris' statements. —— U.S. at ——, 114 S.Ct. at 2445 (Kennedy, J., joined by Rehnquist, C.J. and Thomas, J., dissenting).

**6.** The concurring and dissenting justices espoused differing views as to the meaning of the majority opinion. Justice Kennedy's dissent characterized the majority opinion as "adopting the extreme position that no collateral statements

are admissible under Rule 804(b)(3)." —— U.S. at ——, 114 S.Ct. at 2441 (Kennedy, J., joined by Rehnquist, C.J. and Thomas, J., dissenting). Justice Scalia disagreed:

[A] declarant's statement is not magically transformed from a statement against penal interest into one that is inadmissible merely because the declarant names another person or implicates a possible codefendant. For example, if a lieutenant in an organized crime operation described the inner workings of an extortion and protection racket, naming some of the other actors and thereby implicating himself on racketeering and/or conspiracy charges, I have no doubt that some of those remarks could be admitted as statements against penal interest. Of course, naming another person, if done, for example, in a context where the declarant is minimizing culpability or criminal exposure, can bear on whether the

agree,[7] however—and we now hold—that Justice O'Connor's majority opinion in *Williamson* did not announce a categorical rule that incriminating references to a person other than the declarant can never be self-inculpatory.

In the first place, Justice O'Connor observed that

> [t]here are many circumstances in which Rule 804(b)(3) does allow the admission of statements that inculpate a criminal defendant. Even the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor.

*Id.* at ——, 114 S.Ct. at 2436. Moreover, the Court adopted a contextual approach, rather than a bright line rule, for determining whether a statement is inculpatory as to the declarant. *Id.* ("[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context."). As Justice O'Connor further noted,

> [t]he question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest "that a reasonable person in the declarant's position would not have made the statement unless believing it to be true," and this question can only be answered in light of all the surrounding circumstances.

*Id.* at ——, 114 S.Ct. at 2437 (footnote omitted). Finally, the Court remanded the case with directions to conduct a "fact-intensive inquiry" and to determine "whether each of the statements in Harris' confession was truly self-inculpatory" based on a "careful examination of all the circumstances surrounding the criminal activity involved." *Id.* (O'Connor, J., joined by Scalia, J., concurring). A

remand in *Williamson* would have been unnecessary if the Court had intended to announce a *per se* rule requiring redaction from the declarant's statement of all references to the criminal conduct of a third party.[8]

Although we hold that *Williamson* does not require *automatic* exclusion of inculpatory references to a third party which are made within a broader self-inculpatory statement, we recognize that such references are suspect at best. "One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." —— U.S. at ——, 114 S.Ct. at 2435. References to a third party are not self-inculpatory, for example, if they are "merely attempts to shift blame or curry favor." *Id.* at ——, 114 S.Ct. at 2436; *see also id.* at ——––——, 114 S.Ct. at 2439–40 (Ginsburg, J., joined by Blackmun, Stevens, and Souter, JJ., concurring) (concluding that all of Harris' statements were inadmissible under Rule 804(b)(3) because "[t]hey project an image of a person not acting against his penal interest, but striving mightily to shift principal responsibility to someone else"). It would perhaps be fair to say that a portion of a statement inculpating another person is seldom against the declarant's penal interest, but seldom is not the same as never.

### B. The Trial Judge's Ruling.

Although Hammond apparently agrees with our reading of *Williamson,* he disputes the government's contention that the trial judge interpreted *Williamson* as establishing a *per se* rule. According to Hammond, rather than automatically eliminating inculpatory

---

> statement meets the Rule 804(b)(3) standard. The relevant inquiry ... must always be whether the particular remark at issue (and *not* the extended narrative) meets the standard set forth in the Rule.

*Id.* at ——, 114 S.Ct. at 2438 (Scalia, J., concurring) (emphasis in original).

7. Although Wright argued in his brief that the trial judge correctly interpreted *Williamson* to require *per se* exclusion of all inculpatory references to the criminal conduct of a third party, he appeared to retreat from that position at oral argument. In any event, we agree with Hammond and the government that *Williamson* announced no such categorical rule.

8. Our disposition is in accord with the decisions of the majority of the courts in other jurisdictions which have considered the issue since the Supreme Court decided *Williamson. See, e.g., United States v. Sasso,* 59 F.3d 341, 349–50 (2d Cir. 1995); *United States v. Sims,* 879 F.Supp. 828, 831–35 (N.D.Ill.1995); *State v. Dukes,* 544 N.W.2d 13, 18–19 (Minn.1996); *Tidrow v. State,* 916 S.W.2d 623, 627–29 (Tex.Ct.App.1996); *Linton v. State,* 901 P.2d 439, 440–42 (Alaska.Ct.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1693, 134 L.Ed.2d 793 (1996). *But see Ciccarelli v. Gichner Sys. Group, Inc.,* 862 F.Supp. 1293, 1297–1300 (M.D.Pa.1994).

references to third parties, the trial judge analyzed each individual statement and excluded only those portions as to which "corroborating circumstances did not clearly indicate their trustworthiness." In his view, the trial judge redacted only those portions which "attributed blame to co-defendants" and therefore "lacked the special guarantees of trustworthiness inherent in true statements against penal interest."

■ The trial judge never stated in so many words that *Williamson* established a categorical rule of exclusion, but her comments come very close indeed to such a rule, and she never disavowed it. Our review of the record persuades us that she viewed *Williamson* as precluding, effectively and more or less automatically, the admission, under the declaration against penal interest exception, of any part of a declarant's statement which refers to the criminal conduct of a third party.

Before she ruled on the individual proffered statements, the trial judge engaged in a lengthy discussion with the prosecutor regarding the proper interpretation of *Williamson*. She told the prosecutor:

> You are saying that … if it's a self-inculpatory statement and it inculpates others, that it comes in.… That's not what [Justice] O'Connor says.

She further stated that

> [t]he question that I had in your interpretation of self-inculpatory is that self-inculpatory can include other people doing things that are criminal, and I'm saying to you that I disagree with that.

Subsequently, in redacting from Sweet's statement to a civilian witness the portions implicating Wright and Pleasant, the judge explained:

> We're not getting into an issue in terms of just how reliable it is. The whole point of it is that he is implicating somebody else,

and it goes beyond the ruling that I've made.

The judge also stated:

> This isn't an issue in terms of whether independently it's reliable. I think, unlike other issues … where we've gotten into a specific discussion of the reliability because we viewed it as being self-inculpatory and it doesn't inculpate anybody else, we are now talking about where you are inculpating other people, and we are back to my ruling in *Williamson*.

A fair reading of the transcript as a whole, and of these passages in particular, provides no assurance that the judge was engaging in the "fact-intensive inquiry" required under *Williamson* to determine whether the inculpatory references to other individuals were also "sufficiently against the declarant's penal interest." Rather, the judge appears to have read *Williamson* to require the automatic redaction from each proffered statement of any reference to the criminal conduct of a third party. Accordingly, in conformity with *Williamson*, we remand the case to the trial court with directions that the judge determine whether each of the statements, and each of the incriminating references to one or more third parties, was truly self-inculpatory as to the declarant.

*So ordered.*[9]

---

9. We deal summarily with Hammond's alternative contention that the trial judge's evidentiary rulings should be affirmed because the government "cannot claim the unavailability of a government witness that is predicated on the government's own refusal to immunize."

Hammond cites no authority for this proposition, and indeed, the authority that exists is to the contrary. *See, e.g., United States v. Kehm,* 799 F.2d 354, 361 (7th Cir.1986); *United States v. Lang,* 589 F.2d 92, 95–97 (2d Cir. 1978).