*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 20-CO-0294 & 22-CO-0312

MICHAEL THOMPSON, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2002-FEL-003708)

(Hon. Russell F. Canan, Trial Judge)
(Hon. Neal E. Kravitz, Motions Judge)

(Submitted March 19, 2024                    Decided September 5, 2024)

*Jason K. Clark* was on the brief for appellant.

*Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *John P. Mannarino*, and *Michael E. McGovern*, Assistant United States Attorneys, were on the brief for appellee.

Before EASTERLY and SHANKER, *Associate Judges*, and RUIZ, *Senior Judge*.

EASTERLY, *Associate Judge*: In this consolidated appeal, Michael Thompson[1]

challenges the Superior Court's denial of two motions for post-conviction relief

---

[1] In his brief to this court, Mr. Thompson states that his first name is, in fact, Jason, but he has not asked us to recaption the case.

pursuant to D.C. Code § 23-110. We affirm the denial of Mr. Thompson's first § 23-110 motion and reject his argument, founded on Rule 8 of the Superior Court Rules Governing Proceedings Under D.C. Code § 23-110, that he should have been able to rely on the affidavit he attached to his § 23-110 motion in lieu of testifying at the evidentiary hearing he requested and was granted. We dismiss as moot Mr. Thompson's appeal of the Superior Court's denial of his second § 23-110 motion, in which he argued that his counsel was ineffective in seeking a reduced sentence for him under Super. Ct. Crim. R. 35, because he served his sentence of imprisonment before this case was fully briefed and, although he is still on supervised release, that statutory term is unalterable.

## I.      The First § 23-110 Motion

### A.      Facts and Procedural History

In 2002, Mr. Thompson was convicted of armed robbery and assault with a dangerous weapon.[2] In August 2017, Mr. Thompson filed his first § 23-110 motion, arguing that his trial counsel provided him ineffective assistance and he "suffered

---

[2] On direct appeal, this court vacated Mr. Thompson's assault with a dangerous weapon conviction after concluding that it merged with his armed robbery conviction.

several fair trial deprivations." With respect to the latter,[3] Mr. Thompson argued that he had been "rendered unfit, emotionally and physically, to resume and continue on with his jury trial, . . . due to having been assaulted and beaten by two Deputy United States Marshals . . . at the courthouse, on three separate occasions." Because "[t]he resulting injuries made him unable to participate in the proceedings in a meaningful, effective manner," Mr. Thompson asserted that he was deprived of a fair trial and that the trial court should have sua sponte declared a mistrial.[4]

Mr. Thompson attached an affidavit to his motion detailing the three times he alleged the U.S. Marshals had beaten him. He stated the beatings had all taken place on the second day of his trial (the first day of testimony), Thursday, September 12, 2002. He asserted that he had been beaten before he came to court midday (the beginning of proceedings were delayed because of his absence in the morning), then again during a midafternoon recess, and then again after court concluded for the day. He acknowledged that he had informed the court of the first two incidents immediately after the fact; he had been seen by a nurse at the courthouse after the

[3] Because Mr. Thompson does not challenge the Superior Court's denial of his ineffective assistance of counsel claims in this appeal, we focus on his due process claim, and the court's rejection thereof.

[4] Mr. Thompson's motion also stated that "[a] mistrial should have been asked for by defense counsel," but his post-conviction counsel clarified at the § 23-110 evidentiary hearing that he was not asserting an ineffective assistance of counsel claim with respect to the alleged beatings.

first incident; the court had determined after the first report that he was not visibly injured and did not seem mentally impaired; and the court had determined after the second report that he was not visibly injured, although the court agreed to suspend the examination of witnesses and to recess until the next scheduled trial date. As for the third incident, he alleged that he "was so traumatized and fearful by the [M]arshals' excessive use of force" and their threat that they would beat him again if he reported his mistreatment that, when trial resumed on September 16, 2002, "he was too afraid to raise his hand and tell [the trial judge]" about it. Mr. Thompson asserted in his motion, but not in his declaration, that his trial counsel, Thomas Heslep, "told him not to mention it." He further asserted that when trial resumed on September 16, he "still was unfit to participate, meaningfully, in the trial, as [he] continued to suffer, emotionally and physically, from the assaults on [him] from September 12, 2002."

Mr. Thompson also attached to his first § 23-110 motion the medical records of his visits to the jail infirmary on and after September 12, 2002. The first record, from 9:15 PM on September 12, 2002, documented Mr. Thompson's complaint that he had been "struck in court today by US Marshals" and that he had a headache, some facial swelling, and "contusions of [the] face and head," but no broken bones, and that he was experiencing pain around the areas of his injuries. The remainder of the records relevant to this claim documented his visits to the infirmary over

subsequent weeks in which he complained of continued pain, particularly to his neck, as a result of his injuries from September 12.

Mr. Thompson requested a hearing on his motion because, he asserted, the "issues presented cannot be resolved on the record before the [c]ourt." He asserted that this was "especially true on [his] contention that he was unfit to complete the trial-in-progress, due to the lingering emotional and physical affects from the trauma he suffered on September 12, 2002, when he was assaulted and beaten, on three separate occasions, by two deputy U.S. Marshals at the Courthouse." But when the Superior Court granted his request for a hearing, Mr. Thompson decided not to attend.

At the start of the hearing, counsel for Mr. Thompson explained to the court that although Mr. Thompson, who had been released on supervision, knew about the hearing, he had, "for personal reasons of his own," which counsel could not share, "chosen not to appear." Counsel disavowed a need for a continuance, stating that the reason for Mr. Thompson's absence "i[s] nothing that I can say, oh, let's continue this hearing for three days or next week. In other words, that's not going to cure it."

The court asked counsel if "Mr. Thompson's own testimony [was] essential to his claims?" Counsel responded that it was not as to some claims, but as to his claim that he had been beaten, explained,

we do need Mr. Thompson on that, because Mr. Thompson has alleged in this pleading, through me, and in the declaration he filed that the beatings caused him to be so traumatized that he couldn't effectively participate in the remainder of his jury trial. And one problem with that is that, when [the trial judge] did the *Boyd*[5] inquiry on two different days,[6] Mr. Thompson never complained about, oh, I'm too traumatized. So I was going to have Mr. Thompson explain why he didn't bring it up; in other words, he remained silent on that issue.

Counsel added that he thought Mr. Thompson had "talk[ed] about that" in his declaration, "so we don't absolutely need his testimony, but it would be better." The court pressed counsel on the "inconsisten[cy]" in his statement, and asked again if Mr. Thompson's testimony was "necessary, or not" on this claim. Counsel then responded "no, not absolutely necessary" and noted that they had attached "the medical records as exhibits" to the § 23-110 petition, showing his "soft-tissue injur[ies]," and that "it's sort of on the record that he did not bring that up during the *Boyd* inquiry" at trial; "[i]t's in the transcript." The court then confirmed that

---

[5] *Boyd v. United States*, 586 A.2d 670, 674-75, 677 (D.C. 1991) (holding that "the defendant's right to testify in a criminal trial . . . can only be waived by the defendant" and only after "the trial judge [has] engage[d] the defendant in an on-the-record colloquy to ensure that the waiver . . . is knowing and intelligent").

[6] In fact, the court inquired whether Mr. Thompson wished to testify twice on one day, September 16, 2002. The first time the court raised this issue, all the witnesses had yet to testify, and Mr. Thompson indicated that he had not yet made a decision. The second time the court raised this issue, testimony had been completed and the court conducted a *Boyd* inquiry, at which point Mr. Thompson waived his right to testify.

counsel's position was that, among other reasons, Mr. Thompson's testimony was not necessary "because there are medical records that show soft[-]tissue injury," and counsel responded, "yes."

The government opposed going forward in Mr. Thompson's absence, expressing concern that this would simply provide Mr. Thompson with another ground to seek relief from the court because he "has the burden of proof." The court then explained that in a civil matter such as a § 23-110 hearing a plaintiff is not required to attend, but that if a plaintiff's testimony were required to support a particular claim, that claim would fail. Again noting that Mr. Thompson "knows perfectly well that this hearing was scheduled and, for whatever reasons, is unwilling to come to court," and observing that counsel for Mr. Thompson had taken the position that "he can present evidence on [what]'s legally sufficient to at least put the issue before the court," the court determined it was in the "interest of justice [under] the circumstances" to go forward with the hearing.

At the hearing, the only witness counsel for Mr. Thompson called to testify was Mr. Heslep, Mr. Thompson's trial attorney. When asked about the alleged beatings by the U.S. Marshals on September 12, 2002, Mr. Heslep recalled "a big to-do about them dragging [Mr. Thompson] up the stairs by his feet." Mr. Heslep "had no doubt in [his] mind that [the Marshals] did drag [Mr. Thompson] up the

stairs" because he "lost his shoe," "his jumpsuit was kind of messed up," his "eyeglasses [were] askew," and "there was a medical scratch."[7] Mr. Heslep testified that after Mr. Thompson "bitterly complained to the judge about being whacked . . . by the [M]arshals," the judge directed that Mr. Thompson be seen by a nurse. Mr. Heslep testified that he felt "uncomfortable . . . about the whole situation," and admitted that he had concerns that day about Mr. Thompson's ability to participate in the trial, specifically, "whether he could concentrate or not," because "he was really, really upset." Mr. Heslep did not acknowledge in his testimony that Mr. Thompson had reported two separate incidents of being beaten on September 12, 2002, and he provided no information about a third alleged assault after court on that day. Mr. Heslep testified that by the time the trial resumed on September 16, he no longer had concerns about Mr. Thompson's ability to proceed. Mr. Heslep generally agreed that Mr. Thompson "was certainly competent to go to trial. He was an emotional person, but he understood what was going on" and "he was an active participant in his trial."[8]

---

[7] A "medical scratch" appears to refer to a failure to appear in court due to medical reasons.

[8] During Mr. Heslep's testimony, counsel for Mr. Thompson moved two exhibits into evidence, relevant to his ineffective assistance of counsel claims but not to his claim that he was unable to fully participate in his defense because of being beaten.

After Mr. Heslep testified, counsel for Mr. Thompson rested, gave the court copies of the two exhibits (unrelated to Mr. Thompson's due process claim, *see supra* note 8) that had been moved into evidence earlier, and also moved into evidence an unrelated stipulation about his effort to obtain phone records. The parties then moved on to closing arguments, with the court taking an active role in asking counsel questions about his arguments on Mr. Thompson's behalf.

When counsel turned to the issue of Mr. Thompson's claim that he had been denied his right to receive a fair trial because he could not meaningfully participate in the proceedings after he was beaten, counsel acknowledged that he had planned to ask Mr. Thompson about this claim "on the witness stand" because Mr. Thompson "has to convince Your Honor that he really was too upset" to proceed with his trial. But counsel observed that Mr. Thompson had explained in his declaration why he had not told the trial court about the third beating or about his inability to continue. The court expressed doubt that Mr. Thompson's declaration was "admissible evidence." The court explained that it certainly would have considered the declaration had the government opposed a hearing on Mr. Thompson's § 23-110 motion, "[b]ut now that we're at the hearing, I don't think the declaration is admissible unless the [g]overnment were to agree to it, but I haven't heard that and wouldn't expect that." In the court's view, because Mr. Thompson was not present to testify, the declaration "kind of goes out the

window in terms of the evidentiary record for the actual hearing." With respect to the medical records, the court stated that some might be admissible under the hearsay rule exceptions for business records and statements made for the purpose of obtaining medical treatment or diagnosis, but as to what exactly could come in, "we'd have to litigate that." Indicating that it was familiar with the content of the records even though they had not been admitted into evidence at the hearing, the court noted that, even if some portion of the records were admissible, it did not see what in those records, in conjunction with Mr. Heslep's testimony, showed that Mr. Thompson "was so emotionally upset or physically hurt that he could not meaningfully participate in his defense." Specifically, the court noted that the records showed no evidence of trauma to the back of Mr. Thompson's head even though he accused the Marshals in the first incident of dragging him by his ankles. When the court asked counsel if he was missing anything, counsel responded "no," pointed out a few parts of the transcript corroborating that Mr. Thompson had reported this incident and been upset about it, and then acknowledged that "the rest is [Mr. Thompson's] say-so."

Analyzing the evidence before it, the Superior Court ruled that "there's no evidence in this record, other than the inadmissible evidence in the declaration, that Mr. Thompson was so emotionally upset or physically injured that he could not meaningfully participate in the trial by assisting his lawyer." Given the lack of

"proof that [Mr. Thompson] was essentially disabled from his ability to assist his lawyer" as a result of the beatings by the U.S. Marshals—because Mr. Thompson was not there "to provide testimony consistent with his declaration subject to cross-examination"—the court denied Mr. Thompson's due process claim.

## B.    Analysis

On appeal, Mr. Thompson argues that the court abused its discretion when it refused to consider his declaration and the medical records he submitted in support of his post-conviction motion.    Mr. Thompson contends the Superior Court erroneously "believed that [its] review of the evidence was limited to only the live testimony and exhibits admitted at the evidentiary hearing."  More specifically, he asserts that the Superior Court Rules Governing Proceedings Under D.C. Code § 23-110, and specifically Rule 8, authorize the court to consider an "expanded record" when ruling on a § 23-110 motion, including, in this instance, Mr. Thompson's written declaration and medical records.[9]

---

[9] The government argues preliminarily that we need not address Mr. Thompson's evidentiary argument because he should have been barred from raising his due process claim in a § 23-110 motion given that this claim could have been raised on direct appeal.  Although the government made its procedural bar argument at the hearing, it also acknowledged that the court could opt to decide the due process claim on the "merits."  The Superior Court took the latter course and denied Mr. Thompson's due process claim on the ground that it was not supported by the evidence.  "[A]dher[ing] to the strong judicial policy favoring adjudication

We begin our analysis with our standard of review. Mr. Thompson asks us to review this issue for abuse of discretion, even though he never objected to the Superior Court's ruling about the scope of the evidence before it, much less made an argument that his declaration and medical records were admissible under Rule 8.[10] Ordinarily, we take a dim view of claims raised for the first time on appeal, in criminal cases reviewing them only for plain error, *see Chew v. United States*, 314 A.3d 80, 83 (D.C. 2024) (explaining that appellant who failed to preserve his claims in the trial court "forfeited his right to have this court consider . . . the merits of [his] claims under the court's regular standard of review," but that these claims "remain reviewable by this court subject to the strictures of plain error review" (internal quotation marks and alterations omitted)), and in civil cases bypassing them entirely unless an appellant makes a showing that their case is an "exceptional situation[]" and review is "necessary to prevent a clear miscarriage of justice apparent from the record," *Pajic v. Foote Properties, LLC*, 72 A.3d 140, 145 (D.C. 2013); *see also In re Ta.L.*, 149 A.3d 1060, 1073 & n.11 (D.C. 2016) (en banc) (explaining when the

---

on the merits of a case," we review the Superior Court's ruling. *Walker v. Smith*, 499 A.2d 446, 448-49 (D.C. 1985).

[10] If anything, the fact that Mr. Thompson's counsel moved into evidence several exhibits related to Mr. Thompson's ineffective assistance of counsel claims, *see supra* & note 7, indicates that counsel understood the need to move exhibits into evidence at the hearing and could have litigated the admission of Mr. Thompson's medical records and declaration.

different standards apply). Although we have previously described a § 23-110 hearing as "hybrid in nature, in some respects criminal, and in others, civil," *Williams v. United States*, 878 A.2d 477, 482 (D.C. 2005), we need not determine which standard of review is proper in this case because, even if plain error review applied, Mr. Thompson cannot satisfy the strictures of that test.

"To succeed on plain error review, an appellant must show that (1) there is error[;] (2) such error is plain, meaning clear or obvious, by the time of appellate review; (3) the error affected appellant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of [the] judicial proceedings." *Chew*, 314 A.3d at 83 n.1 (internal quotation marks omitted). Mr. Thompson has not shown that the Superior Court's failure to consider his declaration and medical records—to the extent that there was such a failure[11]—was error, let alone error that was plain. Although Rule 8 includes a reference to "the expanded record," *see* Super. Ct. § 23-110 R. 8(a) (directing that the trial court may rely on "the expanded record" in determining whether to hold an evidentiary hearing), the rule addressing the "Expansion of [the] Record" is actually Rule 7. It

---

[11] The transcript of the § 23-110 hearing does not reflect that the Superior Court failed to consider the substance of Mr. Thompson's medical records entirely. Rather, the court concluded that, even if the records were admissible, there was nothing in them to "show that [Mr. Thompson] was so emotionally upset or physically hurt that he could not meaningfully participate in his defense."

provides that "the judge *may direct* that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the motion." Super. Ct. § 23-110 R. 7(a) (emphasis added). Such materials "may include . . . letters predating the filing of the motion in the court, documents, exhibits, and answers under oath, if so directed, to written interrogatories propounded by the judge," as well as "[a]ffidavits." Super. Ct. § 23-110 R. 7(b). The Rule further provides that "[i]n any case in which an expanded record is directed," the materials "proposed to be included shall be submitted to the party against whom they are to be offered, and [that party] shall be afforded an opportunity to admit or deny their correctness." Super Ct. § 23-110 R. 7(c). We see no reference to Rule 7 in the record, and no indication that the process outlined in the Rule to "expand the record" was followed.

In any event, Rule 8 provides that courts "shall" consider an expanded record when deciding to grant a hearing. Super. Ct. § 23-110 R. 8(a). Here, a hearing was held, and Rule 8 says nothing about what the court should do with the expanded record at that juncture. Rule 12, on the other hand, generally authorizes courts in § 23-110 proceedings to apply both the Superior Court Rules of Criminal Procedure and the Rules of Civil Procedure—which in turn allow the court to apply relevant common law principles, *see, e.g.*, Super. Ct. Crim. R. 26; Super. Ct. Civil R. 43(a)— when "no procedure is specifically prescribed." Super. Ct. § 23-110 R. 12. Both

Super Ct. Crim. R. 26 and Super. Ct. Civ. R. 43 provide that "[t]he admissibility of evidence and the competency and privileges of witnesses" shall be governed "by the principles of the common law as they may be interpreted by the courts in the light of reason and experience," "except when a statute or these rules" otherwise provide. *Accord Laumer v. United States*, 409 A.2d 190, 195 n.7 (D.C. 1979) ("While the decisional law of the federal courts interpreting various rules of evidence often provide guidance, this court is the final authority for establishing the evidentiary rules for the Superior Court of the District of Columbia."). This court recognized the general rule against hearsay in *Laumer*, *see id.* at 194, and more specifically adopted the hearsay exceptions referenced by the Superior Court in its consideration of Mr. Thompson's medical records—statements made for the purpose of medical diagnosis and treatment and business records—in *Sullivan v. United States*, 404 A.2d 153, 158 (D.C. 1979) (statements made for the purpose of medical diagnosis or treatment), and *Howard v. United States*, 473 A.2d 835, 838 (D.C. 1984) (business records), *abrogated on other grounds by Thomas v. United States*, 914 A.2d 1, 5 (D.C. 2006).

The Superior Court applied the common law rules of evidence at Mr. Thompson's § 23-110 hearing: it implicitly concluded that his declaration was hearsay and explicitly stated that the medical records likely contained hearsay and their admissibility needed to be established through hearsay exceptions.

Mr. Thompson did not suggest at the evidentiary hearing, and does not now suggest, that the court's hearsay rulings were incorrect, only that they were overridden by Super. Ct. § 23-110 R. 8. We disagree. We have never so interpreted Super. Ct. § 23-110 R. 8. There is nothing in the text of the Rule to support such an interpretation. And to do so would undermine the whole point of a hearing—to allow the parties to present evidence and have it subject to adversarial testing. *See Shepherd v. United States*, 296 A.3d 389, 397-98 (D.C. 2023) (remanding case where question of appellant's ineffective assistance of counsel claim "will turn on the precise details and the credibility of [investigators'] testimony" and "such credibility determinations . . . may be resolved only by recourse to a full [§ 23-110] evidentiary hearing" (internal quotation marks omitted)). Simply put, it cannot be that a § 23-110 movant can obtain a hearing, put on the testimonial evidence they wish from other witnesses (and cross-examine any government witnesses), and then avoid subjecting themselves to the crucible of adversarial testimony by presenting their testimony via affidavit and other hearsay documents.

## II.    The Second § 23-110 Motion

A month after filing his first § 23-110 motion, Mr. Thompson filed a second § 23-110 motion, pro se, alleging ineffective assistance of his post-conviction

counsel,[12] who represented Mr. Thompson in a Super. Ct. Crim. R. 35 sentence reduction hearing in 2016. Mr. Thompson seeks to challenge the Superior Court's denial of his motion on the ground that he failed to show prejudice. The government argues, however, that Mr. Thompson's appeal of the denial of his second § 23-110 motion is moot. We agree.

As the government notes, even if we were to agree that the Superior Court misanalyzed the prejudice prong of Mr. Thompson's ineffective assistance of counsel claim, the "only remedy would be resentencing on his Rule 35(b) motion"— a remedy from which Mr. Thompson could not benefit. Brief for the United States at 43. Mr. Thompson completed his term of incarceration in January 2021.[13] And, "[r]egardless of the term of imprisonment any resentencing court could potentially impose, it would be statutorily required," under D.C. Code § 24-403.01(b)(2)(A), "to impose the same five-year term of supervised release [Mr.] Thompson is now

---

[12] Attorney Michael Madden was appointed by the court to represent Mr. Thompson with respect to his second § 23-110 motion against Stuart Johnson, Mr. Thompson's post-conviction counsel. Mr. Madden filed a supplement to Mr. Thompson's pro se motion.

[13] Mr. Thompson had appealed the denial of his pro se § 23-110 motion relating to Mr. Johnson's representation on March 23, 2020. But the briefing before this court was not completed until November 2023.

serving."[14]  Brief for the United States at 42-43.  *Cf. United States v. Johnson*, 529 U.S. 53, 59 (2000) (holding that offender who "served too much prison time" in light of two convictions being declared invalid could not credit the excess time to his mandatory supervised release term and explaining that "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release").  Thus, with no possible form of relief available,[15] Mr. Thompson's appeal is moot.  *McBride v. United States*, 255 A.3d

---

[14] This is true, so long as a defendant is subject to a sentence of more than one year and "the maximum term of imprisonment authorized for the offense is 25 years or more."  D.C. Code § 24-403.01(b)(2)(A).  We note, however, that under D.C. Code § 24-403.01(b)(3)(A), the court may impose a term of supervised release of less than five years if it gives a defendant "a sentence of one year or less."  We see no indication on this record, however, that Mr. Thompson, who was serving a sentence of twenty-five years, ever sought a ninety-six percent reduction in his sentence such that he would be exempt from a five-year supervised release term.  In his initial memorandum in support of his Rule 35 motion, he "ask[ed] the Court to reduce [his] sentence of incarceration by more than the eighteen months recommended by the government."  In a supplemental filing a couple weeks later, he requested "a reduction of at least six years of the sentence."  And at the hearing on his motion, counsel for Mr. Thompson noted that while he had "asked for at least a six year reduction, . . . whatever the court decides that's fine," but that it should be "substantially more than a year and half or two years," indicating he was seeking a reduction somewhere in the range of two to six years.  Given that Mr. Thompson never indicated that he was requesting a reduction in sentence anywhere in the ballpark of twenty-four of his twenty-five years, we consider any claim to such theoretical relief to be forfeited and conclude it poses no impediment to a determination of mootness.

[15] Mr. Thompson may seek relief separate and apart from this appeal under 18 U.S.C. § 3583(e)(1), which authorizes the termination of a term of supervised release once a defendant has completed one year of that term.  *See* D.C. Code § 24-133(c)(2) ("The United States Parole Commission shall have and exercise the same authority

1022, 1028 (D.C. 2021) ("[I]t is well-settled that, while an appeal is pending, an event that renders relief impossible or unnecessary also renders that appeal moot." (internal alteration omitted)).

For the foregoing reasons, the judgment of the Superior Court with respect to Mr. Thompson's first § 23-110 motion is affirmed and Mr. Thompson's appeal of the Superior Court's denial of his second § 23-110 motion is dismissed as moot.

*So ordered.*

---

as is vested in the United States district courts by paragraphs (d) through (i) of § 3583 of title 18, United States Code . . . .").